Farris HOLLIMAN *v.* MFA MUTUAL INSURANCE COMPANY, et al.

85-308                                             711 S.W.2d 159

Supreme Court of Arkansas
Opinion delivered June 23, 1986

*Guy Jones, Jr., P.A.*, for appellant.

*Matthews & Sanders*, by: *Gail O. Matthews* and *Marci L. Talbot*, for appellees.

DARRELL HICKMAN, Justice. This suit involves the interpretation of a homeowner's insurance policy issued to Farris Holliman by MFA Mutual Insurance Company. Holliman sued MFA alleging coverage for an accident on his premises which occurred on August 17, 1979. Holliman's brother, Garry, was pouring gasoline in the carburetor of a 1968 Ford automobile as Farris turned on the ignition. The gasoline ignited, burning Garry. Garry sued Holliman alleging negligence. MFA had been notified of the claim against Holliman by Garry Holliman's lawyer. After an investigation, MFA declined coverage because maintenance of the vehicle was the cause of the accident. A default judgment of $25,000 was entered against Holliman on December 28, 1981. Holliman then filed this suit against MFA, using the same lawyer retained by his brother, claiming the homeowner's policy covered the accident because the vehicle was in dead storage, and, therefore, not excluded under the policy. The trial court denied a directed verdict motion by MFA and the jury returned a verdict for Holliman. The trial court granted MFA's motion for judgment notwithstanding the verdict, finding that it was a question of law whether the vehicle was in dead storage or whether it was merely broken down and awaiting repairs. The trial court held the car was not in dead storage; therefore, the accident was not covered by the policy. We affirm the trial court.

The facts in this case are essentially undisputed. Farris Holliman bought a used vehicle in March or April of 1979. He owned three vehicles and none were insured. Both he and his wife drove this particular vehicle several times on the highway to the gas station, but the vehicle was never registered or licensed. About a month before the accident, he parked the vehicle on his premises approximately 100 feet from his house because it would not start. A few days before the accident Holliman charged the battery, the tires were inflated, the radiator had water in it, and there was probably gas in the tank. The vehicle was essentially ready to drive, except it would not start. In attempting to get the car started, the fire occurred and Garry was burned.

Holliman's homeowner's policy provides:

This policy does not apply:

1. Under Coverage E—Personal Liability and Coverage F—Medical Payments to others:

   a. To bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading:

   \* \* \* \*

   (2) Any motor vehicle owned or operated by, or rented or loaned to any insured; but this subdivision (2) does not apply to bodily injury or property damage occurring on the resident premises if the motor vehicle is not subject to motor vehicle registration because it is used exclusively on the residence premises or kept in dead storage on the residence premises.

Holliman argues that while a homeowner's policy excludes personal injuries resulting from the use and maintenance of an automobile subject to registration, this vehicle was not being maintained but was in dead storage, and, therefore, the exclusion does not apply.

Two other states, Alabama and Florida, under strikingly similar facts, have held as a matter of law that a vehicle

undergoing maintenance is not in "dead storage"; thus, personal injuries sustained while maintaining the vehicle are not covered by the homeowner's policy. In *Broadway* v. *Great American Ins. Co.*, 465 So. 2d 1124 (Ala. 1985), the court considered an almost identical homeowner's policy which read:

> 1. Coverage E—Personal Liability and Coverage F—Medical Payments to Others do not apply to bodily injury or property damage: * * * *
>
> e. Arising out of the ownership, maintenance, use, loading or unloading of:
>
> (1) an aircraft:
>
> (2) a motor vehicle owned or operated by or rented or loaned to any insured . . .
>
> [A] motorized land vehicle designed for travel on public roads or subject to motor vehicle registration. A motorized land vehicle in dead storage on an insured location is not a motor vehicle.

The insured purchased a used vehicle for his son. The car broke down and was towed to the insured's residence where it was moved into a shed behind the house. It was determined the vehicle needed extensive repairs including a complete engine overhaul. The vehicle remained parked in the shed for approximately one month. The engine was removed to be rebuilt. Two months after the vehicle was parked in the shed, gasoline was poured into the carburetor to start it, a fire occurred and injured a bystander.

The Alabama court, relying on two Florida decisions, held that the vehicle was being maintained and therefore was not in dead storage. The court said:

> As this court perceives the terms 'dead storage' and 'maintenance of a motor vehicle,' they are mutually exclusive. In other words, a motor vehicle in dead storage is one which is not undergoing maintenance, while a vehicle which is undergoing maintenance cannot be in dead storage. Regardless of the status of the Duster during the time it remained in Ryals's garage untouched, it was undergoing maintenance at the time Broadway's injuries

occurred; consequently, it was not in dead storage.

The court observed that "maintenance" has been held to be an unambiguous term and negligent use of a carburetor would come within the meaning of this term. The court upheld a grant of summary judgment in favor of the insurance company.

The cases cited by the Alabama court, *Lawson* v. *Allstate Ins. Co.*, 456 So.2d 1235 (Fla. App. 3 Dist. 1984), and *Volkswagen Ins. Co.* v. *Dung Ba Nguyen*, 405 So.2d 190 (Fla. App. 3 Dist. 1981), are generally in accord with this decision. In *Volkswagen* a man was injured pouring gasoline in a carburetor and coverage was sought under a homeowner's policy. The court found as a matter of law that the vehicle was being "maintained" when the accident occurred. The court said:

> This policy provides coverage for personal liability to third parties. The policy contains an exclusion which specifically precludes coverage for the maintenance, operation or use of a motor vehicle . . . The attempt to start the truck by pouring gas into the carburetor, which resulted in the ignition of the gas, involved the 'maintenance' of the vehicle within the terms of the exclusion.

We agree with the Alabama court that when a vehicle is being maintained, as it was in this case, it is not in dead storage. The facts in this case present no substantial evidence that this vehicle was in dead storage within the meaning of the policy. When the language of the policy is clear and unambiguous, the court should decide the construction as a matter of law. *National Life and Accident Ins. Co.* v. *Abbott*, 248 Ark. 1115, 455 S.W.2d 120 (1970). Since the policy provision that excluded coverage for injuries arising from maintenance was unambiguous, the trial court could find as a matter of law that the vehicle was not in dead storage and enter accordingly the judgment notwithstanding the verdict.

Holliman also filed a claim for the tort of bad faith alleging MFA failed to defend him in the suit filed by his brother. The trial court refused Holliman's submitted jury instructions concerning these allegations. A trial court can properly refuse to give a jury instruction unsupported by the evidence. *Whitt* v. *State*, 281 Ark. 466, 664 S.W.2d 876 (1984). There is no

evidence that MFA was guilty of any affirmative act of bad faith that would trigger this claim or support the proffered jury instructions. *Aetna Casualty and Surety Co.* v. *Broadway Arms Corp.*, 281 Ark. 128, 664 S.W.2d 463 (1984).

Affirmed.