# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-3625

_____

| | | |
|---|---|---|
| Nikki David, formerly Walker, | * | |
| | * | |
| Plaintiff/Appellant, | * | |
| | * | |
| v. | * | |
| | * | |
| Jerry Tanksley, Kay Tanksley, | * | |
| husband and wife, both jointly | * | |
| and severally, | * | Appeal from the United States |
| | * | District Court for the |
| Defendants/Appellants, | * | Western District of Arkansas. |
| | * | |
| v. | * | |
| | * | |
| St. Paul Mercury Insurance Company, | * | |
| | * | |
| Third Party Defendant, | * | |
| | * | |
| United States Fidelity and Guaranty | * | |
| Company, | * | |
| | * | |
| Third Party Defendant/ | * | |
| Appellee. | * | |

_____

Submitted: April 13, 2000

Filed: July 28, 2000

_____

Before WOLLMAN, Chief Judge, BEAM, Circuit Judge, and FRANK,[1] District
    Judge.

_____

WOLLMAN, Chief Judge.

Nikki David, Jerry Tanksley, and Kay Tanksley appeal from the district court's[2] entry of summary judgment in favor of United States Fidelity and Guaranty Company (USF&G) on their claim for coverage under a homeowner's insurance policy purchased from USF&G. We affirm.

## I.

In 1986, Jerry and Kay Tanksley purchased a 1965 Chevrolet Impala for personal transportation use. They used the car in this capacity until September of 1990, at which time they parked it in a storage shed on their property and allowed its license and registration to expire. From September of 1990 to June 14, 1995, the Tanksleys never drove the Impala either on their property or on public roads. The Tanksleys did little to maintain the car during this time, twice charging its battery and once starting its engine but otherwise performing no maintenance on the vehicle.

On June 15, 1995, the Tanksleys were contacted by Jonathan David, Nikki David's then-fiancé, about purchasing the Impala. The Tanksleys told him that he could stop by to see the car later that day, and in preparation for his visit Jerry Tanksley drove the Impala from its storage area to the driveway in front of the Tanksleys' house.

_____

[1]The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota, sitting by designation.

[2]The Honorable H. Franklin Waters, United States District Judge for the Western District of Arkansas.

Shortly thereafter, Jonathan David arrived with Nikki David and asked to hear the car's engine run. After several unsuccessful attempts to start the engine, Jerry asked Kay to engage the starter and pump the accelerator. As Kay was doing so, Jerry poured some gasoline from a can into the carburetor. The engine backfired, and as Jerry jerked back from the car he inadvertently threw the remaining gasoline onto Nikki David, where it was ignited by flames shooting from the carburetor, resulting in severe burns to her.

On June 11, 1998, Nikki David (hereinafter David) filed suit against the Tanksleys, claiming that they negligently caused the fire that injured her. The Tanksleys, in turn, filed a third party action against USF&G,[3] contending that David's injuries were covered by a homeowner's insurance policy that they had purchased from USF&G. The district court granted summary judgment in favor of USF&G. The court reasoned that David's injuries were not within the purview of the homeowner's policy because the vehicle that caused the injuries was not in "dead storage" at the time of accident, as is required for coverage under the policy. Shortly thereafter, David and the Tanksleys entered into a court-approved agreed judgment of $500,000 against the Tanksleys.

David and the Tanksleys now jointly appeal the district court's summary judgment ruling in favor of USF&G, asking us to find that the damages suffered by David are covered by the Tanksleys' homeowner's policy. We review the court's grant of summary judgment de novo. See Spears v. Missouri Dep't of Corrections & Human Resources, 210 F.3d 850, 853 (8th Cir. 2000). Summary judgment is proper where the evidence, when viewed in the light most favorable to the nonmoving party, indicates that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. See id., Fed.R.Civ.P. 56(c).

---

[3]The Tanksleys' homeowner's policy was originally issued by St. Paul Mercury Insurance Company, but between the June 15, 1995, accident and the filing of the complaint by David, St. Paul merged with USF&G.

## II.

The Tanksleys' homeowner's policy excludes from coverage any "bodily injury or property damage arising out of the ownership, maintenance, use, loading or unloading of motor vehicles." The policy also provides, however, that this exclusion does not apply to "a vehicle . . . not subject to motor vehicle registration which is . . . in dead storage on an insured location." The parties agree that the Tanksleys' Impala was not subject to Arkansas registration requirements because the car was not driven on public highways. See Ark. Code Ann. § 27-14-703 (1994). Thus, the only issue before us is whether the Tanksleys' Impala was in "dead storage" on June 15, 1995. If so, the motor vehicle exclusion does not apply and USF&G is liable under the homeowner's policy for the injuries suffered by David. If not, the motor vehicle exclusion is effective and USF&G is not responsible for David's injuries.

The construction of an insurance policy is governed by state law. See Bell v. Allstate Life Ins. Co., 160 F.3d 452, 455 (8th Cir. 1998). We review the district court's interpretation of state law--in this case, Arkansas law--de novo. See Burlington Northern R. Co. v. Farmers Union Oil Co. of Rolla, 207 F.3d 526, 534 (8th Cir. 2000). Like the district court, our duty is to "ascertain and apply" Arkansas law, "not to formulate the legal mind of the state." R.W. Murray Co. v. Shatterproof Glass Corp., 697 F.2d 818, 826 (8th Cir.1983) (quoting Aguilar v. Flores, 549 F.2d 1161, 1163 (8th Cir. 1977)). In doing so, we are bound by the decisions of the Arkansas Supreme Court. See Bass v. General Motors Corp., 150 F.3d 842, 847 (8th Cir. 1998). When that court has not clearly spoken on an issue, we may consider "relevant state precedent, analogous decisions, considered dicta, . . . and any other reliable data." Id. (citations and quotations omitted).

The Arkansas Supreme Court construed the phrase "dead storage" within a homeowner's policy in Holliman v. MFA Mutual Ins. Co., 711 S.W.2d 159 (Ark. 1986), the only reported Arkansas case construing this language. In Holliman, the

-4-

insured purchased a used vehicle and drove it, unregistered, on public roads until the car's engine would no longer start. The insured then stored the car on his property, largely untouched, for approximately one month, at which time he and his brother attempted to start the vehicle by pouring gasoline into its carburetor. The gasoline ignited and injured the insured's brother. The insured sued for coverage under his homeowner's policy, claiming that the car was in dead storage and thus that the policy's motor vehicle exclusion was inapplicable.

The Arkansas Supreme Court rejected the insured's claim. The court first focused on the relationship between the terms "maintenance" and "dead storage" as they were used, respectively, in the policy's motor vehicle exclusion and its exception to this exclusion. See Holliman, 711 S.W.2d at 161. Adopting the Alabama Supreme Court's reasoning in Broadway v. Great Am. Ins. Co., Inc., 465 So.2d 1124 (Ala. 1985), the court determined that these terms were mutually exclusive, stating that "a motor vehicle in dead storage is one which is not undergoing maintenance, while a vehicle which is undergoing maintenance cannot be in dead storage." See Holliman, 711 S.W.2d at 161 (quoting Broadway, 465 So.2d at 1127). The court then concluded that the insured's car was "being maintained" at the time the accident occurred and thus that the car was not in dead storage. See Holliman, 711 S.W.2d at 161-62.

We conclude that Holliman mandates a holding that the Tanksleys' Impala was not in dead storage. First, the relevant provisions of the Tanksleys' homeowner's policy are substantively indistinguishable from those in Holliman. See id. at 160 ("This policy does not apply to bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading [of] [a]ny motor vehicle . . . , but this subdivision does not apply . . . if the motor vehicle is . . . kept in dead storage on the residence premises."). Thus, the mutual exclusivity of maintenance and dead storage pronounced in Holliman is equally applicable to this case.

Second, Holliman establishes that the pouring of gasoline into a car's carburetor in an attempt to start the vehicle constitutes "maintenance." See id. at 161. Although the car in Holliman had sat idle for one month, the court found that the vehicle was being maintained, quoting a Florida court's statement that "[t]he attempt to start the truck by pouring gas into the carburetor, which resulted in the ignition of the gas, involved the 'maintenance' of the vehicle within the terms of the exclusion." See Holliman, 711 S.W.2d at 161 (quoting Volkswagen Ins. Co. v. Dung Ba Nguyen, 405 So.2d 190, 195 (Fla. Dist. Ct. App. 1981)). So also, the Tanksleys' attempt to start the Impala by pouring gasoline into its carburetor constituted maintenance, and thus the Impala was not in dead storage within the meaning of the Tanksleys' homeowner's policy.

David and the Tanksleys, however, attempt to distinguish Holliman from the present case. They argue that Holliman's determination that dead storage and maintenance are mutually exclusive and that pouring gasoline into a carburetor constitutes maintenance applies only in cases where the vehicle at issue is intended to be used for transportation. Thus, they assert that although the pouring of gasoline into a carburetor may have precluded a finding of dead storage in Holliman, where the vehicle at issue was "merely . . . awaiting repairs" so that it could be driven again, see Holliman, 711 S.W.2d at 160, the same action does not preclude a finding of dead storage in this case in light of the fact that the vehicle had not been used for transportation for nearly five years and was being held and sold as a collectible.

We disagree. In finding that the vehicle was not in dead storage, the Holliman court did not consider the vehicle's past use or intended future use, but rather focused on how the vehicle was being used at the time of the accident at issue. See id. at 161. Indeed, the court favorably quoted from Broadway, in which the the Alabama Supreme Court stated that "[r]egardless of the status of the [vehicle] during the time it remained in [the insured's] garage untouched, it was undergoing maintenance at the time Broadway's injuries occurred; consequently it was not in dead storage." Holliman, 711

-6-

S.W.2d at 161 (quoting <u>Broadway</u>, 465 So.2d at 1127).  Thus, even assuming that the Tanksleys' Impala was not intended for transportation use, we believe that the principles set forth in <u>Holliman</u> govern this case.

In sum, then, we conclude that the Tanksleys' Impala was being maintained at the time of the June 15, 1995, accident and that it was therefore not in dead storage under the terms of the Tanksleys' homeowner's policy.[4]

The judgment is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[4]This conclusion is not only consistent with the Arkansas Supreme Court's reasoning in <u>Holliman</u>, it is also in accord with the conclusions reached by most other courts that have construed the terms "maintenance" and "dead storage" within a homeowner's policy.  <u>See</u> <u>Broadway</u>, 465 So.2d at 1127-29; <u>Mascair v. State Farm Fire & Cas. Co.</u>, 619 So.2d 108, 110 (La. Ct. App. 1993); <u>Prudential Property & Cas. Ins. Co. v. Allaire</u>, 516 N.E.2d 179, 180-81 (Mass. App. Ct. 1987); <u>but see</u> <u>Allstate Ins. Co. v. Geiwitz</u>, 587 A.2d 1185, 1188-89 (Md. Ct. Spec. App. 1991).