# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-2347

_____

| | | |
|---|---|---|
| Retail Associates, Inc., | * | |
| | * | |
| Plaintiff - Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Macy's East, Inc., | * | |
| | * | |
| Defendant - Appellee. | * | |

_____

Submitted:  December 13, 2000

Filed:  April 4, 2001

_____

Before LOKEN and HEANEY, Circuit Judges, and BATTEY,* District Judge.

_____

LOKEN, Circuit Judge.

This diversity action concerns the termination of an October 1995 Consignment Agreement (the "Agreement") under which Retail Associates, Inc., sold maternity clothing in fifty-four Macy's department stores.  Macy's terminated the Agreement by written ninety-day notice in May 1997.  Retail Associates sued, alleging various state law claims, and now appeals the grant of summary judgment in Macy's favor, arguing

_____

*The HONORABLE RICHARD H. BATTEY, United States District Judge for the District of South Dakota, sitting by designation.

that the district court[1] erred in dismissing the claim for equitable recoupment under New York law. We affirm.

## I.

Retail Associates began business in the late 1970s and by 1995 was operating leased maternity clothing departments in 396 stores owned by sixteen department store chains. In 1995, a merger united the parent companies of Abraham & Straus, a Retail Associates client, and Macy's. Some stores in which Retail Associates operated leased departments were converted to Macy's stores. This led to discussions about placing Retail Associates maternity departments in additional Macy's stores. Retail Associates and Macy's entered into the twenty-one page Agreement with this expansion in mind.

Under the Agreement, Retail Associates agreed to supply maternity clothing to designated Macy's stores on a consignment basis. Though Retail Associates operated the leased maternity departments, Macy's provided the finished store space, a sales staff, and other support services. Macy's billed customers for their maternity clothing purchases and remitted sales revenues to Retail Associates, less a 21% commission paid to Macy's. Retail Associates provided a $260 trade fixture for each store and promised to spend at least three percent of net sales on advertising. Section D of the Agreement addressed the question of termination. It provided in relevant part:

> D-1. The term of this Agreement shall commence on the date first written above and shall continue in full force and effect indefinitely until terminated by either party by the giving of not less than ninety (90) days' written notice of termination to the other party, which rights to terminate shall be absolute and may be exercised with or without cause. . . .

---

[1]The HONORABLE JOHN R. TUNHEIM, United States District Judge for the District of Minnesota.

D-2.  The provisions of Paragraph D-1 shall apply to each individual department as well as to the total agreement.  However, either party may terminate a specific department upon thirty (30) days written notice to the other party. . . .

The Agreement initially designated nineteen Macy's stores in which Retail Associates would operate leased maternity departments.  In June and October 1996, Retail Associates expanded the relationship to include twenty-four additional Macy's stores.  On December 26, 1996, Macy's gave a thirty-day written notice terminating the leased departments in eighteen stores.  When Retail Associates complained that it needed more time to sell or transfer inventory, the parties agreed on a schedule of termination dates between January 27 and March 6, 1997.

In January 1997, Retail Associates proposed "to amend the contract term to run through January 31, 1998, and then cancellable thereafter on ninety (90) days notice."  Macy's reply is not in the record, but it obviously rejected this proposal.  In April 1997, in response to a Retail Associates inquiry, Macy's advised that it would soon terminate the entire Agreement and therefore Retail Associates should not purchase inventory for the 1997 fall/winter season.  On May 30, Macy's provided the ninety-day written termination notice required by paragraph D-1 of the Agreement.  The parties then negotiated a staggered termination schedule that allowed Retail Associates to move unsold inventory from early-terminated stores to those that still remained open.  Eventually, all remaining inventory was moved to leased departments in those New England stores that remained open until January 1998.

In the district court, Retail Associates argued that the Agreement was a contract of indefinite duration and therefore should be construed as continuing for a reasonable time, that is, the period necessary to recoup any investment made with the knowledge of the other party, Macy's.  Retail Associates supported this recoupment claim with a damage analysis prepared by its business valuation consultant.  That analysis concluded

that Retail Associates had an "unrecouped investment" of $1,187,239 in its leased maternity departments in Macy's stores.[2] The district court granted summary judgment dismissing this claim on the ground that, under New York law, a reasonable duration term may not be implied or read into a written contract which contains an explicit termination provision such as Section D of the Agreement.

On appeal, Retail Associates challenges the district court's interpretation of New York law. New York law applies to the recoupment claim because the Agreement provided that it would be governed by New York law. See Gateway W. Ry. v. Morrison Metalweld Process Corp., 46 F.3d 860, 863 (8th Cir. 1995) (in diversity cases federal courts apply forum State's choice-of-law rules); Milliken & Co. v. Eagle Packaging Co., 295 N.W.2d 377, 380 n.1 (Minn. 1980) (Minnesota law enforces contract choice-of-law provisions). We review the district court's interpretation of New York law *de novo*. Salve Regina Coll. v. Russell, 499 U.S. 225, 231 (1991).

Under New York law, the construction of a contract, including ascertaining the intent of the contracting parties, is a question of law for the court, unless the contract is ambiguous and determination of the parties' intent turns on the weighing of extrinsic evidence. See Sutton v. East River Sav. Bank, 435 N.E.2d 1075, 1077-78 (N.Y. 1982); Hartford Accident & Indem. Co. v. Wesolowski, 305 N.E.2d 907, 909 (N.Y. 1973). Here, although the *amount* of Retail Associates' alleged unrecouped investment would of course be an issue of fact, both parties treat the issue of whether Retail

---

[2]Though purporting to be a recoupment analysis, we conclude the consultant in fact conducted a type of lost profits analysis. The damage calculations were based upon factors such as reduced gross profit margin, abnormal advertising expenses, and a share of corporate overhead, rather than Retail Associates' unrecouped out-of-pocket expenditures. Retail Associates operated maternity departments in Macy's stores from at least late 1995 until January 1998. Our review of the consultant's financial data suggests that these operations were profitable overall, though no doubt the early termination made them less profitable than Retail Associates had anticipated.

Associates is entitled to recoup its investment as an issue of New York law. We turn to that issue.

## II.

At the outset, we confront a difficulty in characterizing Retail Associates' recoupment claim. As adopted and applied by this court under Minnesota law, equitable recoupment is a theory for determining when to construe an oral or written contract which contains no duration term as continuing for a reasonable duration. See Cambee's Furniture, Inc. v. Doughboy Recreational, Inc., 825 F.2d 167, 172-73 (8th Cir. 1987); Ag-Chem Equip. Co. v. Hahn, Inc., 480 F.2d 482, 486-87 (8th Cir. 1973). But in Schultz v. Onan Corp., 737 F.2d 339, 347 (3d Cir. 1984), the Third Circuit applied the doctrine to override an *explicit* at-will contract provision that would otherwise have precluded the terminated party from recouping its investment in the contract relationship. Under this approach, the right to equitable recoupment is divorced from breach-of-contract analysis, and recoupment becomes a device by which judges may rescue a party from its bad bargain by taking money away from the other party, whose conduct has been wholly lawful. Retail Associates has entirely obscured this distinction, relying heavily on Schultz in its briefs, while purporting to argue a reasonable duration, breach-of-implied-contract theory. To our knowledge, no New York case has expressly applied the doctrine of equitable recoupment in *any* context. But New York cases have discussed when a duration term may be implied from an indefinite contract. That is the issue we will address. We find no indication in prior cases that the New York Court of Appeals would embrace the more open-ended recoupment doctrine of Schultz.

In arguing that New York law recognizes a broad right of recoupment, Retail Associates relies primarily upon Colony Liquor Distribs., Inc. v. Jack Daniel Distillery-Lem Motlow Prop., Inc., 254 N.Y.S.2d 547, 549-50 (N.Y. App. Div. 1965), in which an intermediate appellate court construed a long-standing oral distributor agreement as

being for a reasonable duration and therefore terminable only upon reasonable notice. Colony was later construed by the New York Court of Appeals:

> In the absence of an express term fixing the duration of a contract, the courts may inquire into the intent of the parties and supply the missing term if a duration may be fairly and reasonably fixed by the surrounding circumstances and the parties' intent. It is generally agreed that where a duration may be fairly and reasonably supplied by implication, a contract is not terminable at will.
>
> While we have not previously had occasion to apply it, the weight of authority supports the related rule that <u>where the parties have not clearly expressed the duration of a contract, the courts will imply that they intended performance to continue for a reasonable time</u> (*Colony* . . .).

Haines v. City of New York, 364 N.E.2d 820, 822 (N.Y. 1977) (emphasis added; citations other than Colony omitted). Haines was not cited by either party or by the district court. Though the above-quoted passage was dicta, it is a discussion of New York law by the highest court in the State, the court we must follow in applying New York law. David v. Tanksley, 218 F.3d 928, 930 (8th Cir. 2000). Accordingly, we conclude that Colony as construed in Haines is the governing New York law.[3]

The significance of Haines is that it expressly limited the Colony doctrine to cases "where the parties have not clearly expressed the duration of a contract." That

---

[3]Consistent with Haines, New York federal courts applying New York law have construed some contracts having no stated duration as being terminable after a reasonable duration and upon reasonable notice. See Copy-Data Sys., Inc. v. Toshiba Am., Inc., 755 F.2d 293, 301 (2d Cir.), cert. denied, 474 U.S. 825 (1985); Entis v. Atlantic Wire & Cable Corp., 335 F.2d 759, 763 (2d Cir. 1964); Metal Assocs., Inc. v. East Side Metal Spinning & Stamping Corp., 165 F.2d 163, 165 & n.3 (2d Cir. 1947); Italian & French Wine Co. of Buffalo, Inc. v. Negociants U.S.A., Inc., 842 F. Supp. 693, 699 (W.D.N.Y. 1993).

limitation is consistent with another well-recognized principle of New York law -- that "New York courts will enforce a termination clause as written." Niagra Mohawk Power Corp. v. Graver Tank & Mfg. Co., 470 F. Supp. 1308, 1315 (N.D.N.Y. 1979) (discussing New York cases); accord Noah v. L. Daitch & Co., 192 N.Y.S.2d 380, 385 (N.Y. Sup. Ct. 1959); Sharpe v. Great Lakes Steel Corp., 9 F.R.D. 691, 693 (S.D.N.Y. 1950). For example, in A.S. Rampell, Inc. v. Hyster Co., 144 N.E.2d 371, 379 (N.Y. 1957), the New York Court of Appeals rejected the contention that a reasonable notice requirement should be read into a written dealer contract providing that either party might terminate "at any time":

> Authorities cited by plaintiff . . . . state the rule that where there are *no* provisions in a manufacturer-dealer contract as to termination, the manufacturer will only be allowed to terminate the agreement after reasonable notice. But where as here the parties have agreed to a termination clause, the clause has been enforced as written. The parties assented to the terms of the contract when they entered into it, and no reason is now presented which justifies altering the clear provisions of the agreement.

In this case, Section D of the Agreement contains an express termination clause, providing that the consignment relationship may be terminated without cause "by either party by the giving of not less than ninety (90) days' written notice." Retail Associates argues the contract is nonetheless of indefinite duration. There are two problems with this contention. First, it is factually inaccurate -- the ninety-day notice provision also served as a minimum duration term, giving Retail Associates at least ninety days in which to recoup its investment. Second, if Retail Associates is arguing that the absence of a definite term made the Agreement not terminable at will as a matter of law, the argument fails under New York law. Paragraph D-1 unambiguously created an at-will relationship by giving either party the absolute right to terminate without cause. As Rampell confirms, under New York law unambiguous termination provisions are enforced according to their terms.

Haines leaves open a more limited breach-of-contract argument under New York law -- that the Agreement did not clearly express the duration of the contract, and the parties intended that it continue for a reasonable time before being terminable at will. But Retail Associates neither made this argument nor submitted evidence supporting this interpretation of the parties' intent. Instead, the Agreement's surrounding circumstances are consistent with a mutual intent that the contract be terminable without cause at any time upon ninety days notice. Because Macy's provided finished floor space, sales staff, cash registers, and billing services, Retail Associates made virtually no capital expenditures before embarking upon the consignment relationship. Though Retail Associates purchased its maternity clothing inventory from third-party suppliers, the clothing was resold in six-month seasons, making the ninety-day notice provision quite consistent with expected inventory turn-over. Moreover, Retail Associates operated leased departments in over 300 other stores, which would no doubt provide opportunities to dispose of inventory remaining after termination. Thus, the inference is strong that Retail Associates entered into Section D of the Agreement understanding the relationship would be terminable at any time and believing it was adequately protected by the ninety-day notice provision, an inference reinforced by its January 1997 proposal to amend the Agreement to provide for a one-year term.

For these reasons, we conclude the district court properly construed and enforced Section D of the Agreement. Accord Valley Liquors, Inc. v. Renfield Imps., Ltd., 822 F.2d 656, 670-71 (7th Cir. 1987) (applying Illinois law). Retail Associates concedes that Macy's complied with the Agreement's termination provision. Accordingly, the judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.