# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-2012
_____

| | | |
|---|---|---|
| Nationwide Insurance Company, | * | |
| | * | |
| Plaintiff/Appellee, | * | |
| | * | |
| v. | * | |
| | * | Appeal from the United States |
| Central Missouri Electric Cooperative, | * | District Court for the |
| Inc., | * | Western District of Missouri. |
| | * | |
| Defendant, | * | |
| | * | |
| Federated Rural Electric Insurance | * | |
| Corporation, | * | |
| | * | |
| Defendant/Appellant. | * | |

_____

Submitted:  February 12, 2001

Filed:  July 31, 2001 (Corrected October 1, 2001)
_____

Before WOLLMAN, Chief Judge, BOWMAN, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

_____

WOLLMAN, Chief Judge.

Federated Rural Electric Insurance Corporation (Federated) appeals the district court's[1] judgment that it is contractually obligated to indemnify the Central Missouri Electric Cooperative (CMEC) for the settlement of a tort suit filed by Richard and Ruth Balke  and the court's allocation of damages between Federated and Nationwide Insurance Company (Nationwide) pursuant to a time on the risk analysis.  We affirm.

## I.  BACKGROUND

### A.  The Underlying Lawsuit

In 1992, Richard and Ruth Balke, then the co-owners of a dairy farm located near Cole Camp, Missouri, filed suit in Missouri state court against CMEC, an energy supplier and the owner of the equipment providing electricity to their dairy.  The Balkes alleged that in 1982 CMEC installed a defective 50 kva Wagner transformer on their property and that thereafter they received inconsistent voltage electricity, at times in excess of 120v or 240v, until the faulty transformer was replaced in 1991.  The Balkes claimed that the irregular supply of electricity damaged their computerized dairy operation and resulted in, inter alia, inconsistencies in the milking process, disease in the herd, higher than average electric bills, damaged equipment, and ultimately, reduced profits.  Although the Balkes' complaint pled alternate theories of liability, including negligence, strict liability, res ipsa loquitur, breach of implied warranty, and fraudulent misrepresentation, the case was ultimately submitted to a jury in Cooper County, Missouri, solely on res ipsa loquitur and strict liability theories, with the jury being instructed that any damages sustained prior to July 7, 1987, were barred by the relevant statute of limitations.  The jury awarded the Balkes $783,333.

---

[1]The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri.

On appeal, the Missouri Court of Appeals reversed the jury verdict and remanded for a new trial limited to negligence theories of liability. Balke v. CMEC, 966 S.W.2d 15, 27 (Mo. Ct. App. 1997). The court affirmed the trial court's statute of limitations determination, however, finding that the defective electrical transformer "constituted a continuing wrong which created fresh injuries to [the Balkes] from day to day," and therefore that the individual damages incurred after July 7, 1987, were not time-barred. Id. at 20-21. Prior to re-trial, Nationwide, which insured CMEC in 1982, 1983, 1984, and 1991, settled the case on CMEC's behalf for $859,108; Federated, which insured CMEC from 1985 through 1990, contributed $150,000 to the settlement.

## B. The Present Action

After co-funding the settlement of the Balkes' lawsuit against CMEC, Nationwide filed this action in federal district court seeking a declaration (1) that it had no obligation to indemnify CMEC for damages that were barred by the statute of limitations; and (2) that it had no obligation to indemnify CMEC for damages sustained during Federated's coverage period from 1985 through 1990. Nationwide conceded that it was obligated to indemnify CMEC for damages that occurred during its 1991 policy period, but sought an allocation of damages to Federated in excess of the $150,000 that Federated contributed to settle the underlying tort suit.

Federated counterclaimed, arguing that the sole occurrence triggering insurance coverage was the 1982 negligent installation of the faulty transformer, and that Nationwide was therefore solely responsible for the damages incurred by the Balkes pursuant to the terms of its 1982 policy. Federated therefore sought recovery of the $150,000 that it had contributed to the settlement.

The parties filed cross-motions for summary judgment, and the district court granted summary judgment to Nationwide. The court concluded that Nationwide was obligated to indemnify CMEC only for damages that occurred in 1991 and that

Federated was responsible for all damages incurred from 1985 through 1990. The court then applied a time on the risk analysis to allocate responsibility for the $859,108 settlement between Federated and Nationwide, concluding that Federated was responsible for 77.7% of the settlement, equaling $667,526.92.[2] Because Federated had already contributed $150,000, the court entered judgment against it in the amount of $517,526.92.

On appeal, Federated contends (1) that Nationwide must indemnify CMEC for the entire $859,108 settlement; (2) that it has no obligation to indemnify CMEC under any of its policies; (3) that the district court erred in allocating damages; and (4) that the court abused its discretion by considering the affidavit of a Nationwide employee.

## II.  DISCUSSION

### A.  Standard of Review

We review the district court's grant of summary judgement de novo, Luigino's, Inc. v. Stouffer Corp., 170 F.3d 827, 830 (8th Cir. 1999), and we apply the same standard as did the district court:  whether the record, viewed in a light most favorable to the non-moving party, demonstrates no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Barrera v. Con Agra, Inc., 244 F.3d 663, 665 (8th Cir. 2001).  The construction of an insurance policy is governed by state law, David v. Tanksley, 218 F.3d 928, 930 (8th Cir. 2000), and our review of the district court's interpretation of state law--in this case, Missouri law--is de novo. Id. Our duty is to ascertain and apply Missouri law, not to formulate the legal mind of the state. Id.

---

[2]The court determined that Federated insured CMEC for 1273 out of the total 1638 days from July 7, 1987 to December 31, 1991.

## B. The Insurance Policies

Federated insured CMEC on an annual basis from 1985 through 1990. These policies provided, in relevant part, "Federated will pay on behalf of the policyholder all sums . . . which the policyholder shall become legally obligated to pay as damages because of personal injury, or property damage, to which this insurance applies, caused by an occurrence." The policies defined an "occurrence" as "[a]n accident occurring within the policy period, including continuous or repeated exposure to conditions, which results in Personal Injury or Property Damage neither expected or intended from the standpoint of the insured."

Nationwide provided CMEC with similar liability insurance from May of 1982 through 1984, and again in 1991. In an affidavit submitted to the district court, Tim Woods, Nationwide's legal counsel for specialty claims, averred that the company was unable to locate the policies in effect from 1982 to 1984. Woods conceded, however, that Nationwide insured CMEC during the years in question for damages resulting from an "occurrence." He further stated that he was personally familiar with the 1982, 1983, and 1984 policies, and that these policies defined "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in personal injury, advertising injury, or property damage within the policy period, and is neither expected or intended from the standpoint of the insured . . . ." Nationwide was able to produce a certified copy of its 1991 policy, which provided that it would pay "all sums . . . which the insured shall become legally obligated to pay as damages because of . . . property damage . . . caused by an occurrence." The 1991 policy included the same definition of "occurrence" as did Nationwide's earlier policies.

## C. Policy Coverage Issues

We must determine which of the insurance policies issued by Federated and Nationwide indemnify CMEC for the settlement of the Balkes' lawsuit. We turn first, therefore, to the question of which underlying events trigger coverage under the terms of the respective policies. Our analysis of this issue is controlled by Missouri law, which provides that "the time of the occurrence of an accident within the meaning of an indemnity policy is not the time the alleged wrongful act was committed, but is the time <u>when the complaining party was actually damaged</u>.'" <u>Shaver v. Insurance Co. of North America</u>, 817 S.W.2d 654, 657 (Mo. Ct. App. 1991) (quoting <u>Kirchner v. Hartford Accident & Indem. Co.</u>, 440 S.W.2d 751, 756 (Mo. Ct. App. 1969)). After reviewing the terms of the relevant policies in light of this standard, we conclude that the policies insure against the damages that occurred during the respective policy periods, regardless of when the underlying cause of the injuries occurred.[3] <u>See</u> <u>Keene</u>

_____

[3] We therefore reject Federated's claim that the insurance policies are triggered by the underlying cause of the damage to the Balke farm. Federated cites several cases in support of this proposition. These cases hold that "it is more reasonable to evaluate an occurrence as the cause of property damage rather than as the property damage itself. In other words, analysis should focus on the underlying circumstances which result in the claim for damages, instead of the items of the property damage." <u>Cargill, Inc. v. Liberty Mutual Insurance Co.</u>, 488 F. Supp 49, 53 (D. Minn. 1979) (quotation omitted); <u>see</u> <u>also</u> <u>Kansas Fire and Cas. Co. v. Koelling</u>, 729 S.W.2d 251 (Mo. Ct. App. 1987); <u>Kissell v. Aetna Cas. & Surety Co.</u>, 380 S.W.2d 497 (Mo. Ct. App. 1964). Federated's reliance on cases from other jurisdictions is misplaced, because Missouri law clearly controls here. Morever, we reject Federated's claim that Missouri law mandates such an approach. Although we recognize that Missouri may apply a simplified cause analysis to determine whether a single insurance policy covers a loss, or to determine the coverage limits or applicable deductibles under a given policy, we find no indication that this analysis applies to the circumstances involved in this case. To the contrary, <u>Shaver</u> dictates that damages trigger insurance coverage under Missouri law. 817 S.W.2d at 657. Accordingly, we must apply an "effects" rather than a "cause" analysis.

Corp. v. Ins. Co. of North America, 667 F.2d 1034, 1040 (D.C. Cir. 1981) (observing that the language of similar insurance policies "clearly provides that an 'injury,' and not the 'occurrence' that causes the injury, must fall within a policy period for it to be covered by the policy").

Having thus concluded that the policies are triggered by the occurrence of damages, not by negligent acts, we next address the timing of the damages. There are multiple approaches to addressing this issue. For example,

> [i]f coverage is triggered at the time that personal injury or property damage becomes known to the victim or property owner, the approach is identified as the "manifestation theory." If coverage is triggered when real personal injury or actual property damage first occurs, the approach is called the "injury in fact theory." If coverage is triggered when the first exposure to injury-causing conditions occurs, then the court is said to have chosen the "exposure theory." Finally, if coverage is triggered in a manner such that insurance policies in effect during different time periods all impose a duty to indemnify, then the approach is labelled a "continuous" or "multiple" trigger theory.

Dow Chem. Co. v. Associated Indem. Corp., 724 F. Supp. 474, 478-79 (E.D. Mich. 1989) (citations omitted) (emphasis in original).

It is not entirely clear which of these approaches is appropriate under Missouri law. Although we have previously predicted that Missouri would apply an exposure theory of damages, Continental Ins. Co. v. Northeastern Pharm. & Chem. Co., Inc., 842 F.2d 977, 984 (8th Cir. 1988) (en banc), an argument can be made that an injury in fact approach is more appropriate. Shaver, 817 S.W.2d at 657 (coverage triggered "when the complaining party was actually damaged"); Independent Petrochem. Corp. v. Aetna Cas. Insur. Co., 672 F. Supp. 1, 3 (D.D.C. 1986) (applying Missouri law). Because we conclude that the obligations of both insurers are triggered under either theory of liability, we need not determine which method is required under Missouri law.

Contrary to Federated's repeated contentions, this case involves multiple, distinct injures, Balke, 966 S.W.2d at 21, that occurred during multiple policy periods including every year from 1985 through 1991. The record reflects that these injuries triggered each policy under either an injury in fact or an exposure theory. We therefore agree with the district court that both Federated and Nationwide are obligated to indemnify CMEC for the damages that occurred at the Balke dairy.

There remains the question of the extent of liability under the terms of the policies. Missouri law is clear on this matter: insurance coverage restricted to an occurrence during the policy period "limit[s] an insurance policy to injuries arising during the policy period and . . . exclude[s] from coverage injuries which occur subsequent to that period, even though the injuries may have been caused by acts done while the policy was in effect." Universal Reinsurance Corp. v. Greenleaf, 824 S.W.2d 80, 84 (Mo. Ct. App. 1992) (quoting Dennis Cain Motor Co. v. Universal Underwriters Ins. Co., 614 S.W.2d 275, 277 (Mo. Ct. App. 1981)). Although each insurer is therefore liable for injuries suffered during its coverage period, under Missouri law neither can be held liable for injuries occurring during the other's policy period.

We agree with the district court's conclusion that, in light of the applicable statute of limitations, the $859,108 settlement represents only the damages incurred by the Balkes from July 7, 1987, through December 31, 1991.

We accordingly concur with the district court that "Federated must indemnify CMEC for injuries suffered by the Balkes from July 7, 1987 to December 31, 1990, and Nationwide must indemnify CMEC for damages sustained during 1991."

## D. Allocation of Damages

Federated contends that the district court should have apportioned damages pursuant to an injury in fact analysis rather than a time on the risk method. The record

suggests, however, that the bulk of the damage incurred by the Balkes occurred during Federated's period of coverage. Thus, if damages are apportioned based the timing of the actual injuries, Federated would likely bear even more responsibility for the Balke settlement than under a time on the risk analysis. Federated appears to believe, however, that the application of an injury in fact analysis in apportioning damages would relieve it of all liability for the Balke settlement. This argument is foreclosed by the Missouri Court of Appeal's conclusion that this case involves multiple injuries that occurred over the course of numerous years. Balke, 966 S.W.2d at 21. Because much of this harm occurred during Federated's coverage period, Federated cannot escape responsibility for the Balke settlement through an injury in fact apportionment of damages.

The question remains whether the district court was correct in apportioning damages based on the insurers' time on the risk. The court considered utilizing an injury in fact analysis, but concluded, given the complexities involved in determining the precise timing of the multiple injuries suffered by the Balkes, that a time on the risk analysis was appropriate. In these particular circumstances, we do not disagree, particularly because the Missouri courts have resorted to a similar analysis in a analogous situation. Continental Cas. Co. v. Medical Protective Co., 859 S.W.2d 789, 792 (Mo. Ct. App. 1993). We therefore affirm the district court's allocation of damages and the judgment against Federated in the amount of $517,526.92.

## E. Affidavit of Tim Woods

Finally, Federated challenges the district court's consideration of the affidavit submitted by Tim Woods, Nationwide's legal counsel for specialty claims. We agree with Nationwide that this argument is more properly styled, at least in part, as a

challenge to the district court's denial of Federated's Rule 12(f)[4] motion to strike the affidavit. Because a district court enjoys liberal discretion under Rule 12(f), Stanbury Law Firm, v. I.R.S., 221 F.3d 1059, 1063 (8th Cir. 2000), we review this claim for an abuse of discretion. See id.; Chock v. Northwest Airlines, Inc., 113 F.3d 861, 863-64 n.3 (8th Cir. 1997). We find none here.

Federated also argues that the affidavit was insufficient because it failed to fully describe the provisions, exclusions, and definitions of Nationwide's insurance policies. This argument is without merit, however, in light of our interpretation of Missouri law.

The judgment is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[4]Federal Rule of Civil Procedure 12(f) states, in pertinent part, ". . . the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."