No.  3--05--0524

Filed August 15, 2006.

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2006

| | | |
|---|---|---|
| STANDARD MUTUAL INSURANCE COMPANY, | ) ) ) | Appeal from the Circuit Court of the 13th Judicial Circuit, Grundy County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) ) | No.  03--CH--89 |
| JOHN D. MARX, | ) ) | |
| Defendant, | ) ) | |
| and | ) ) | |
| M&S RENTALS, INC., and SPRINGFIELD FIRE & CASUALTY COMPANY, | ) ) ) ) | Honorable Lance R. Peterson, Judge, Presiding. |
| Defendants-Appellants. | ) | |

JUSTICE SLATER delivered the opinion of the court:

After a fire occurred in a storage unit rented by defendant John Marx, plaintiff Standard Mutual Insurance Company filed a declaratory judgment action to determine its obligations to Marx under a homeowner's insurance policy.  Also named as defendants were M&S Rentals, Inc. (M&S), the owner of the storage facility, and its insurer, Springfield Fire and Casualty Insurance Company (Springfield), which sought to recover from Marx for damage caused to the storage facility.  The trial court granted

summary judgment in favor of plaintiff, finding that the motorcycle which caused the fire was excluded from coverage under the policy. On appeal, M&S and Springfield (hereinafter "defendants"[1]) contend that the trial court erred in finding that Marx's motorcycle was not in "dead storage." We affirm.

Facts

Marx rented two bays in a storage facility owned by M&S in Morris, Illinois. Among the items stored in the bays were four motorcycles which Marx considered to be collector's items: a 1976 Honda Goldwing; a 1980 Honda Goldwing; and two 1979 Yamaha 750 cc motorcycles. Only the 1980 Honda was licensed and insured. Marx would occasionally operate the three unlicensed motorcycles in the parking lot of the storage facility. On September 1, 2003, Marx went to the storage facility and tried to start one of the 1979 Yamahas. He had last ridden it a month earlier. Marx used the foot pedal to prime the cycle and pushed the electric start button. There was an explosion and Marx was thrown from the motorcycle. After unsuccessfully trying to put out the ensuing fire with a towel, Marx called 911. The fire damaged both Marx's belongings and the storage facility. M&S, through its insurer, Springfield, subsequently made a claim against Marx for damages caused by the fire in excess of $177,000. Marx sought a defense and coverage under his homeowner's policy issued by plaintiff, which responded with a reservation of rights and a declaratory judgment action. The trial court granted summary judgment in favor of plaintiff, finding that the

_____

[1] Defendant Marx did not file a notice of appeal. His motion for leave to adopt the brief and argument of M&S and Springfield was denied by this court.

motorcycle was excluded from coverage and that an exception to the exclusion for vehicles in "dead storage" did not apply. This appeal followed.

Analysis

In construing the language of an insurance policy, the primary objective is to ascertain and give effect to the intent of the parties; the policy must be construed as a whole, taking into account the type of insurance, the nature of the risks involved and the overall purpose of the contract. Travelers Insurance Co. v. Eljer Manufacturing, Inc., 197 Ill. 2d 278, 757 N.E.2d 481 (2001). Construction of the provisions of an insurance policy is a question of law subject to de novo review. Eljer, 197 Ill. 2d 278, 757 N.E.2d 481.

The homeowner's policy issued to Marx by plaintiff excluded liability and medical payments coverage for injury or property damage arising out of:

"The ownership, maintenance, use, loading or unloading of motor vehicles or all other motorized land conveyances, including trailers, owned or operated by or rented or loaned to an 'insured'[.]"

The policy further provided, however, that the exclusion did not apply to:

"A vehicle or conveyance not subject to motor vehicle registration which is:

* * *

(c) In dead storage on an 'insured location'[.]"

Defendants maintain that the trial court erroneously found that the motorcycle was not in dead storage. As there are no reported cases in Illinois construing that phrase, defendants rely on several cases from other jurisdictions for the proposition

3

that a vehicle can be in dead storage even when it is being started or is undergoing maintenance.  See <u>Allstate Insurance Co. v. Burns</u>, 837 N.E.2d 645 (Ind. Ct. App. 2005) (unlicensed car which had been inoperable for over a month was in dead storage notwithstanding that fire occurred while insured was attempting to start car); <u>Allstate Insurance Co. v. Geiwitz</u>, 86 Md. App. 704, 587 A.2d 1185 (1991) (car kept by insured as collectible rather than for transportation was in dead storage despite fact that car was occasionally driven on property where it was stored and accident occurred while repairing gas gauge); <u>Nationwide Mutual Fire Insurance Co. v. Allen</u>, 68 N.C. App. 184, 314 S.E. 2d 552 (1984) (motorcycle which had been inoperable for six months prior to fire caused when insured was "inspecting" cycle in his living room was in dead storage); <u>Sharpe v. State Farm Fire & Casualty Co.</u>, 558 F. Supp. 10 (E.D. Tenn. 1982) (old, unlicensed vehicles that were not driven on highway but were occasionally driven on insured's property were in dead storage).

Plaintiff, on the other hand, relies on cases holding that a vehicle which is undergoing maintenance or is being started is not in dead storage.  See, <u>e.g.</u>, <u>Nationwide Mutual Insurance Co. v. McMahon</u>, 365 F. Supp. 2d 671 (E.D. N.C. 2005) (car undergoing maintenance by priming carburetor in attempt to start it was not in dead storage); <u>David v. Tanksley</u>, 218 F. 3d 928 (8th Cir. 2000) (same); <u>North Star Mutual Insurance Co. v. Carlson</u>, 442 N.W. 2d 848 (Minn. Ct. App. 1989) (same); <u>Holliman v. MFA Mutual</u>

4

Insurance Co., 289 Ark. 276, 711 S.W. 2d 159 (1986) (same); Broadway v. Great American Insurance Co., 465 So. 2d 1124 (Ala. 1985) (same); see generally, Annotation, Liability Insurance: When is Vehicle in "Dead Storage", 48 A.L.R. 4th 591 (1986). Our review of these authorities leads us to the same conclusion reached by the trial court: a vehicle is not in dead storage when a person is attempting to start it. As the Minnesota Court of Appeals explained in Carlson:

> "We believe this determination appropriately highlights the distinction between homeowners and automobile insurance policies. Motor vehicles are inherently dangerous instrumentalities and homeowners policies generally do not contemplate coverage of injuries when the vehicle is maintained or used in one of its inherently dangerous capacities. One inherently dangerous aspect is a motor vehicle's use of highly volatile materials (gasoline) around ignition sources (spark plugs). This was precisely the cause of the accident in this case. Accidents caused by maintenance or use of a vehicle in such an inherently dangerous capacity are not appropriately covered in a homeowners policy, but rather in an automobile policy which requires consequently higher premiums for the increased risk of injury." Carlson, 442 N.W. 2d at 855.

We believe that this analysis properly focuses on the vehicle's status at the time the accident occurred. For example,

5

if the fire at the rental facility had been caused by spontaneous combustion of oily rags while Marx was absent, the Yamaha might very well have been considered to be in dead storage. The same cannot be said for a vehicle which is being started. "The 'dead' in 'dead storage' suggests, at the least, that the engine would not be running." American Family Mutual Insurance Co. v. Van Gerpen, 151 F. 3d 886, 888 (8th Cir. 1998).

Defendants insist, however, that the term "dead storage" is ambiguous, and therefore it must be construed against the plaintiff. If the language of an insurance policy is susceptible to more than one reasonable meaning, it is considered ambiguous and will be construed against the insurer. Gillen v. State Farm Mutual Automobile Insurance Co., 215 Ill. 2d 381, 830 N.E.2d 575 (2005). Conversely, if the words of a policy are clear and unambiguous, they must be afforded their plain, ordinary and common meaning. Eljer, 197 Ill. 2d 278, 757 N.E.2d 481. Ambiguity is not created merely because the parties disagree (RBC Mortgage Co. v. National Union Fire Insurance Co., 349 Ill. App. 3d 706, 812 N.E.2d 728 (2004)), and a court will not strain to find ambiguity in an insurance policy where none exists (Eljer, 197 Ill. 2d 278, 757 N.E.2d 481).

Contrary to defendants' argument, the phrase "dead storage" is not rendered ambiguous merely because the courts in various jurisdictions have not interpreted it uniformly. In determining whether an ambiguity exists, a court must consider the disputed language in its factual context. American Family Mutual Insurance Co. v. Martin, 312 Ill. App. 3d 829, 728 N.E.2d 115 (2000). A vehicle which is periodically

6

driven by its owner, even briefly on private property, is not in dead storage, and an accident caused by an attempt to start that vehicle is not the type of risk contemplated by the parties to a homeowner's policy. We find no ambiguity under these circumstances.

Moreover, even if we were to accept defendant's argument concerning the phrase "dead storage," that policy exception also requires the vehicle to be in storage on an "insured location." As defined in the policy, an insured location includes "premises occasionally rented to an 'insured' for other than 'business' use." (Emphasis added.) In State Farm Fire and Casualty Co. v. Wonnell, 178 Ill. App. 3d 823, 825, 533 N.E.2d 1131, 1132 (1989), a homeowner's policy excluded liability and medical coverage for any injury arising out of the rental of the insured premises unless the rental was "on an occasional basis." The insured put her house up for sale and rented it to a tenant on a month to month basis for a seven month period, during which time the tenant was injured. This court held that the rental had not been occasional, defining the term as occurring or appearing at irregular or infrequent intervals. Wonnell, 178 Ill. App. 3d at 825, 533 N.E.2d at 1133, quoting Webster's New Collegiate Dictionary 787 (1981). We noted that the tenancy had not been irregular or infrequent, but had continued for seven months without interruption, an arrangement that "constituted a full- fledged rental of the subject premises." Wonnell, 178 Ill. App. 3d at 825, 533 N.E.2d at 1133.

Similarly in this case, the storage units where the fire occurred cannot be said to have been rented to Marx on an irregular or infrequent basis. According to Marx's deposition testimony and his answers to plaintiff's request to admit facts, Marx had rented the same two storage bays for a period of three years prior to the fire. Such

7

extended and continuous use cannot be characterized as "occasional" and therefore, even if the motorcycle was considered to be in dead storage, it was not in an "insured location" within the terms of the policy.  Accordingly, we affirm the trial court's order granting summary judgment to the plaintiff.

For the reasons stated above, the judgment of the circuit court is affirmed.

Affirmed.

O'BRIEN and HOLDRIDGE, J.J., concur.