**SHELTER MUTUAL INSURANCE COMPANY, Respondent,**

v.

**Dustin SAGE, et al., Defendants,**

**Everett and Mary Carter, Appellants.**

No. WD 68049.

Missouri Court of Appeals, Western District.

July 8, 2008.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 2, 2008.

James D. Walker, Jr., Kansas City, for appellant.

Ben T. Schmitt, Theresa Hall, and Joshua L. Fizer, Co-Counsel, Kansas City, for respondent.

Before HOWARD, C.J., HARDWICK and DANDURAND, JJ.

LISA WHITE HARDWICK, Judge.

Everett and Mary Carter appeal a summary judgment ruling, which held that

their automobile accident claims are not covered by insurance policies issued by Shelter Mutual Insurance Company. For reasons explained herein, we affirm the summary judgment.

### FACTUAL AND PROCEDURAL HISTORY

The facts are not in dispute. On May 4, 2004, Everett Carter was seriously injured when his vehicle was struck head-on by a truck driven by Dustin Sage. Dustin was at fault. At the time of the accident, Dustin was involved in a family business raising cattle with his father, Harold Sage, and his brother, Travis Sage. Behind two separate trucks, they were hauling a cattle feeder and bulk feeder from their family farm to a summer grazing area approximately twenty miles away. Harold and Travis were traveling in a Ford F250 truck that was not involved in the accident.

Everett and his wife, Mary Carter, filed suit against Dustin, Harold, and Travis under a theory of joint venture. The claims against Dustin were dismissed after his vehicle insurer, Progressive, paid its policy limits of $100,000 to the Carters. Harold and Travis were both insured by Shelter. Travis and Harold had homeowners' policies and two automobile policies, one on a 1990 Ford F250 pickup, which Travis was driving the day of the accident, and the other on a 1989 Chevrolet Corsica.

Pursuant to Section 537.065,[1] Harold, Travis and the Carters agreed to pursue claims solely for the coverage provided by the four Shelter policies. Judgment was entered against Harold and Travis in the amount of $50,000 to Mary for loss of consortium, and for Everett in the amount of $497,542 (less the $100,000 already paid by Progressive).

Shelter filed an action for declaratory judgment seeking a determination of no coverage under its four policies. Shelter later filed a motion for summary judgment, which the court granted on all four policies. The Carters appeal, contending their claims are covered by Harold's homeowner's policy and one of the automobile policies naming Harold and Travis as insureds.

### STANDARD OF REVIEW

■ Our review in summary judgment is *de novo. ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo.banc 1993). We review the evidence in a light most favorable to the party against whom judgment was entered. *Id.* "The key to summary judgment is the undisputed right to judgment as a matter of law; not simply the absence of a fact question." *Id.* at 380.

■ In their two points on appeal, Carters claim the trial court erred in entering summary judgment for Shelter on the three policies in issue because the policy language provides coverage or, at the least, creates an ambiguity with regard to coverage which should be resolved in their favor. When asked to construe policy language, we give the language its plain meaning, viewed in the context of the policy as a whole. *Farm Bureau Town & Country Ins. v. Barker,* 150 S.W.3d 103, 105–06 (Mo.App.2004).

■ "Whether an insurance policy is ambiguous is a question of law." *Id.* at 106. When there is duplicity, indistinctness or uncertainty as to the words used, or the policy is reasonably open to different constructions, it is considered ambigu-

---

1. All statutory references are to Revised Statutes of Missouri (2000) unless otherwise not-

ed.

ous. *Id.* If there is ambiguity, the policy is construed against the insurer. *Id.* However, courts are not permitted to create an ambiguity in order to enforce a particular construction. *Id.* If the language is unequivocal, it should be given its plain meaning, and the policy enforced as written. *Id.*

### ANALYSIS

**Homeowner's Policy**

 The Carters contend that an Incidental Farming Personal Liability endorsement to Harold's homeowner's policy provides coverage for their accident claims.[2] The endorsement provides:

### INCIDENTAL FARMING PERSONAL LIABILITY (SECTION II ONLY)

For an additional premium, under Coverage E–Personal Liability and Coverage F–Medical Payments to Others, **we** will pay up to our limit of liability for **bodily injury** or **property damage** arising out of farming operations that are conducted on the **residence premises**. All other provisions of this policy apply.

Under the Carters' theory, Harold, Dustin, and Travis were involved in a joint cattle venture on Harold's property. This venture required the men to move farm equipment from Harold's property to the summer pasture. The automobile accident occurred in the course of moving the equipment. The Carters, therefore, argue that Everett sustained bodily injuries arising out of the farming operations conducted on Harold's property.

This argument ignores additional language in the endorsement referring to the applicability of all other provisions in the policy. The policy contains a specific exclusion for operation of a motor vehicle:

### EXCLUSIONS—SECTION II

Under Personal Liability and Medical Payments to Others, we do not cover:

1. **bodily injury or property damage** arising out of the ownership, maintenance, use or entrustment of:

(b) any **land motor vehicle,** other than a **recreational motor vehicle,** owned or operated by or rented or loaned to an **insured.**

The policy defines "land motor vehicle" as meaning "a motorized vehicle designed for travel on public roads or subject to motor vehicle registration." The Carters do not dispute that Dustin's truck is a land motor vehicle.

Relying principally on *American States Co. v. Broeckelman,* 957 S.W.2d 461 (Mo. App.1997), the Carters argue the motor vehicle exclusion, when read with the endorsement, creates an ambiguity that should be resolved in their favor. We disagree.

 Words or phrases in a policy must be interpreted in the context of the policy as a whole and cannot be considered in isolation. *Seeck v. Geico Gen. Ins. Co.,* 212 S.W.3d 129, 133 (Mo.banc 2007). Seeming contradictions in an insurance policy must be harmonized if reasonably possible. *Haggard Hauling & Rigging Co. v. Stonewall Ins. Co.,* 852 S.W.2d 396,

**2.** Shelter asserts this argument was never made to the trial court and was thereby waived. We have scoured the record and find that Shelter is technically correct, in that this specific endorsement was never discussed as a potential basis for recovery. However, the total policy, including the endorsement, was part of the record before the court; and the legal question posed was whether there was coverage under the terms of the policy. We cannot assume the trial court did not address the more direct argument made here. Moreover, under a *de novo* review of legal issues, we would not be bound by the trial court's determinations.

401 (Mo.App.1993). These rules apply equally when comparing endorsements and language in the body of the policy; they should be construed together unless they are in such conflict they cannot be reconciled. *Pickthall v. Freistatt Mut. Ins. Co.,* 84 S.W.3d 111, 113 (Mo.App.2002).

Here, unlike *Broeckelman,* the "motor vehicle" exclusion does not eliminate the coverage afforded under the Incidental Farming Personal Liability endorsement. It merely imposes a limitation on the coverage—just as it does for all other coverage in this homeowners' policy—by not insuring a risk that is typically associated with an automobile insurance policy. As the trial court properly noted, "[T]he homeowners [policy] doesn't cover operation of a vehicle. It covers your-your home, your premises, what you might do on that, and specifically excludes bodily injury arising out of the use of any land motor vehicle[.]" Point I is denied.

*Automobile Liability Policies*

■ In Point II, the Carters argue that the two automobile policies, which named Travis as an insured[3], provide coverage even though neither of the automobiles insured under those policies was involved in the accident.[4] When the accident occurred, Travis was driving the Ford F250, which was a "described vehicle" under one of the policies. Travis was working as a part of his joint venture with Dustin, who caused the accident and was operating his own vehicle. Based on these facts, the Carters argue the accident was caused by a "non-owned" vehicle, for which coverage is provided in the automobile insurance policies. They contend the policy

language does not require that the named insured be driving the "non-owned" vehicle in order for coverage to exist. In making this argument, they focus on the following policy language:

## PART I—AUTO LIABILITY

### COVERAGE A—BODILY INJURY LIABILITY

### COVERAGE B—PROPERTY DAMAGE LIABILITY

### INSURING AGREEMENTS FOR COVERAGES A & B

Subject to the limit of **our** liability stated in this Part, **we** will pay on behalf of an insured, all sums which such **insured** becomes legally obligated to pay as damages, if those damages result from an **accident** which is caused by the **ownership** or **use** of the **described auto** or a **non-owned auto.**

The policies further provide that the words in bold type are defined in the definition segments of the policies unless a different meaning is stated in a particular coverage or endorsement. The relevant definitions include the following:

(7) **Described auto** means the vehicle described in the Declarations, but only if **you own** that vehicle. It includes a **temporary substitute auto.**

(13) **Insured** means the **person** defined as an **insured** in, or with reference to, the specific coverage or endorsement under which coverage is sought.

---

3. The automobile policies also list Harold as an insured, but the argument on appeal only addresses the availability of coverage based on the Carter's claims against Travis as a named insured.

4. Shelter filed a motion to dismiss the Carters' second point on appeal, which they contend raised new factual allegations for the first time on appeal. These "new facts" have no bearing on the outcome of the appeal. The motion is denied.

(17) **Named insured** means all **persons** listed in the Declarations as such.

(18) **Non-owned auto** means any **auto,** being **used** or **occupied** with **permission,** other than:

 (a) the **described auto;**

 (b) an **auto owned** by **you** or any resident of **your** household; or

 (c) an **auto** which **you** or any resident of **your** household has **general consent** to **use**[.]

(22) **Own** means that the **person** referred to holds the legally recognized title to, or is a leaseholder of, an item of real or personal property, irrespective of the fact that there may be other **owners.** This definition is not changed by the patterns of usage of the property.

(23) **Owner** means any **person** who is a legally recognized titleholder or leaseholder of an item of real or personal property, irrespective of the fact that there may be other titleholders or leaseholders. An **owner's** status as such is not changed by the patterns of usage of the property.

(28) **Relative** means an **individual** related to **you** by blood, marriage, or adoption who is primarily a resident of, and actually living in, **your** household.... **Relative** does not mean any **individual** who owns an **auto,** or whose husband or wife owns an **auto.**

(30) **Temporary substitute auto** means an **auto** which is not **owned** by **you** or any resident of **your** household, while it is temporarily **used,** with **permission,** as a substitute for the **described auto.**

(32) **Use** means **operation** and **maintenance.**

(36) **You** means any **person** listed as a **named insured** in the Declarations....

ADDITIONAL DEFINITIONS USED IN PART I

As used in this Part, **insured** means:

(1) **You,** with respect to **your ownership** or **use** of the **described auto** and your **use** of a **non-owned** auto;

(2) any **relative,** with respect to his or her **use** of the **described auto** or a **non-owned auto;**

(3) any **individual** who is:

 (a) related to **you** by blood, marriage, or adoption, who is primarily a resident of, and living in, **your** household, including **your** unmarried and unemancipated child away at school; or

 (b) a foster child in **your** legal custody for more than ninety consecutive days immediately prior to the **accident;** but only with respect to that **individual's use** of the **described auto**[.]

Shelter argues the definitions make it clear that in order for the policies to apply to this accident, the named insured, Travis, had to be using Dustin's truck as the non-owned auto. We agree.

▪ The general rule is that definitions in an insurance policy are controlling as to the terms used within the policy. *Bowan ex rel. Bowan v. Gen. Sec. Indem. Co. of Az.,* 174 S.W.3d 1, 5 (Mo.App.2005). If a term is defined in a policy, the court will look to that definition rather than looking elsewhere. *Hrebec v. Aetna Life Ins. Co.,* 603 S.W.2d 666, 671 (Mo.App. 1980).

Assuming for the sake of this discussion that Dustin's vehicle was a non-owned auto under the policies, the term "**you**" is defined as "any **person** listed as a **named insured** in the Declarations." "Insured" is further defined as "**you,** with respect to **your ownership** or **use** of the **described auto** and **your use** of a **non-owned auto**" or a "**Relative**" who lives in your house-

hold. While the insuring agreement may not expressly limit coverage to the insured's ownership or use of a non-owned auto, clause (1) of the definition of "insured" applicable to Part I plainly does so. Here, the accident did not involve a "described auto" and Travis was not operating Dustin's pick-up. There is also no dispute that Dustin was not a relative living in Travis's household. Under these facts, no coverage is available under Travis's automobile policies for claims resulting from an accident caused by Dustin while driving his own vehicle.

■ This finding is consistent with Missouri cases exploring the purpose of "non-owned auto" or "drive other cars" provisions in policies:

> [T]he purpose of the non-owned automobile clause was to cover occasional or incidental *use* of other cars without the payment of an additional premium, but to exclude coverage for habitual *use* of other cars, which would increase the risk on the insurance company without the corresponding increase in the premium.

*Spicer by Spicer v. Jackson by Berra*, 853 S.W.2d 402, 404 (Mo.App.1993) (*citing State Farm Mut. Auto. Ins. Co. v. W. Cas. & Sur. Co.*, 477 S.W.2d 421, 424 (Mo.banc 1972)). *See also Earl v. State Farm Mut. Auto. Ins. Co.*, 820 S.W.2d 623, 624 (Mo. App.1991). It is the incidental use of the non-owned vehicle by the insured that triggers coverage. To hold otherwise would extend liability under the policy well beyond what the parties anticipated. Point II is denied.

### CONCLUSION

We affirm the trial court's judgment.

All Concur.