FOREMOST SIGNATURE
INSURANCE COMPANY,
Respondent,

v.

Mark MONTGOMERY, Paulette Montgomery, Defendants,

and

Charlene Cameron and Terry Cameron, Appellants.

No. ED 90484.

Missouri Court of Appeals,
Eastern District,
Division One.

Oct. 21, 2008.

Mark R. Bahn, Fenton, MO, for appellant.

Kristi J. Booker, Poplar Bluff, MO, for respondent.

PATRICIA L. COHEN, Judge.

### Introduction

Terry and Charlene Cameron appeal the trial court's decision granting Foremost Signature Insurance Company's petition for declaratory judgment. The Camerons contend that the trial court erred in granting Foremost's petition for declaratory judgment because it wrongly concluded that Mark and Paulette Montgomery's truck, which struck and injured Ms. Cameron, was not in "dead storage" and, therefore, was not covered by the Montgomerys' homeowner's insurance policy. We affirm.

### Statement of Facts

Foremost issued a homeowner's policy ("Policy") to the Montgomerys in November 1999. The Policy covered personal liability and medical payments to others for bodily injury or property damage that occurred on the insured premises subject to certain exclusions. Section II of the Policy excluded coverage for bodily injury or property damage arising out of the ownership or use of a land motor vehicle, but provided an exemption for a land motor vehicle "not subject to motor vehicle registration because it is . . . kept in dead storage on the premises." [1]

The Policy was in effect on June 18, 2000 when Mr. Montgomery operated a 1977 F-150 Ford truck that struck and injured his step-son's wife, Charlene Cameron. At the time of the accident, the F-150, which was parked outside the Montgomerys' trailer home, was neither insured nor registered in the state of Missouri. Approximately two days prior to the accident, Mr. Montgomery had transferred the license plates from the F-150 to a recently purchased truck because he planned to sell the F-150. Mr. Montgomery had also cancelled the insurance on the F-150 some time prior to the accident. The F-150 had been for sale approximately one week at the time of the accident. Prior to that time, the F-150 was Mr. Montgomery's primary means of transportation, and he had driven the F-150 a few days to one week before the accident.

On June 18, 2000, Mr. Montgomery started the F-150 truck at the request of a prospective buyer. As Mr. Montgomery was starting the vehicle, the foot grip on the clutch petal "slipped off." Because the F-150 was in first gear, it lurched forward, striking Ms. Cameron, who was walking in front of it, and pinning her against another vehicle.

Ms. Cameron and her husband, Terry Cameron, sued the Montgomerys under the theories of negligence, negligent entrustment, premise liability, and loss of consortium. Foremost filed a petition for declaratory judgment seeking a determination that the Policy did not cover Ms. Cameron's injuries and that Foremost did not have a duty to indemnify the Montgomerys. After hearing oral arguments and the testimony of Mr. Montgomery, the trial court issued its judgment in favor of Foremost holding that the Policy did not cover the F-150 truck at the time of the accident because the vehicle was not in "dead storage." The Camerons appeal.

---

1. Section II of the Policy provided that:

 PERSONAL LIABILITY COVERAGE AND MEDICAL PAYMENTS TO OTHERS COVERAGE DOES NOT PAY FOR BODILY INJURY OR PROPERTY DAMAGE
 Arising out of the ownership, maintenance, use, loading or unloading of:

 A land motor vehicle designed for use on public roads, owned or operated by or rented or loaned by you.
 This exclusion does not apply if the land motor vehicle is not subject to motor vehicle registration because it is:
 used exclusively on the premises; or
 kept in dead storage on the premises.

### Standard of Review

■ In a court-tried declaratory judgment action, interpretation of an insurance policy is a question of law and, where resolution of a controversy is a question of law, the trial court receives no deference. *Automobile Club Inter–Ins. Exchange v. Medrano,* 83 S.W.3d 632, 637 (Mo.App. E.D.2002). We apply the *Murphy v. Carron* standard only when there is an ambiguity within the policy necessitating a factual determination. *Id.* Because we are interpreting the meaning of an insurance policy that does not contain any ambiguity, our review is de novo. *Millers Mut. Ins. Ass'n of Illinois v. Shell Oil Co.,* 959 S.W.2d 864, 866–67 (Mo.App. E.D.1998).

### Discussion

The Camerons claim that the trial court erred in granting Foremost's petition for declaratory judgment because Foremost failed to prove that the accident did not fall within the Policy's "dead storage" exclusion.[2] The Camerons further contend that the Policy term "dead storage" is ambiguous and must therefore be construed in favor of the insureds.

■ The interpretation of the meaning of an insurance policy is a question of law. *Seeck v. Geico Gen. Ins. Co.,* 212 S.W.3d 129, 132 (Mo. banc 2007). In construing the terms of an insurance policy, this Court "applies the meaning which would be attached by an ordinary person of average understanding if purchasing insurance and resolves ambiguities in favor of the insured." *Id.* (internal quotations omitted). Additionally, we will interpret the policy language consistent with the reasonable expectations, objectives, and intent of the parties. *Chase Resorts Inc. v.*

*Safety Mut. Cas. Corp.,* 869 S.W.2d 145, 150 (Mo.App. E.D.1993).

■ Courts may consider dictionary definitions to determine the common meaning of contract terms. *Citizens Ins. Co. of Am. v. Leiendecker,* 962 S.W.2d 446, 453 (Mo.App. E.D.1998). Black's Law Dictionary defines "dead storage" as: "The stowage of goods, esp. motor vehicles, for a long time in a public storage area, as opposed to the daily or regular stowage of goods in active use." BLACK'S LAW DICTIONARY 404 (8th ed.2004). While Webster's Dictionary does not define "dead storage," it defines "dead" as "no longer producing or functioning," "no longer in use," "being out of action or out of use." MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 295 (10th ed.1995). Webster's Dictionary defines "store" as "the act of storing: the state of being stored" and defines "store" as "to place or leave in a location (as a warehouse, library, or computer memory) for preservation or later use or disposal." *Id.* at 1159.

There are no reported Missouri cases interpreting the term "dead storage." However, in *Am. Family Mut. Ins. Co. v. Van Gerpen,* the Eighth Circuit Court of Appeals applied Missouri law to a motor vehicle exclusion similar to the exclusion relevant here and concluded that the insured's homeowner policy did not cover injuries suffered by a guest who fell from insured's moving tractor. 151 F.3d 886, 888 (8th Cir.1998). The Court reasoned: "Regardless of the precise connotations the term may convey, dead storage is clearly a type of storage, and the state of being in storage is inconsistent with the state of being in use. The 'dead' in 'dead

---

2. In the argument section of their brief, the Camerons suggest that the trial court also erred in concluding that the F–150 was "used exclusively on the premises." However, be-

cause the Camerons failed to refer to this argument in their point relied on it is not preserved for appellate review. *Brizendine v. Conrad,* 71 S.W.3d 587, 593 (Mo. banc 2002).

storage' suggests, at the least, that the engine would not be running." *Id.*

■ Like the tractor in *Van Gerpen*, Mr. Montgomery's F–150 was not in dead storage at the time of the accident because its engine was running for the purpose of demonstrating its operational capacity. Mr. Montgomery had driven the F–150 three to seven days before the accident. Most importantly, the truck remained in operating condition, and was, in fact, being operated at the time of the accident. The facts that the truck had sat idle for several days and that Mr. Montgomery cancelled the truck's insurance and registration because he planned to sell it do not change the truck's status to "dead storage." As the facts of this case demonstrate, the truck was not in "dead storage" because prospective buyers could, upon request, listen to the engine run and, presumably, take the truck for a test drive before purchasing the vehicle.

Foremost directs us to cases from other jurisdictions holding that a vehicle that is undergoing maintenance or being started is not in dead storage. *See e.g., Nationwide Mut. Ins. Co. v. McMahon*, 365 F.Supp.2d 671, 677 (E.D.N.C.2005) (holding that car undergoing maintenance by priming carburetor in attempt to start it was not in dead storage); *Bowen v. Hanover Ins. Co.*, 599 A.2d 1150, 1151 (Me.1991) (holding that unregistered, disabled, and unused truck that inexplicably rolled into the street was not in dead storage). Our review of these cases leads us to the same conclusion reached by the trial court: a vehicle is not in dead storage when a person is attempting to start it, particularly, as here, for the purpose of demonstrating that it is operational and suitable for purchase as a functioning motor vehicle.

This interpretation of the term "dead storage" is consistent with the reasonable expectations, objectives, and intent of the parties. The purpose of the Montgomerys' homeowner policy was to cover the insureds' home and premises and any personal liability or medical payments arising from injuries or property damage sustained thereon. *See Shelter Mut. Ins. Co. v. Sage*, 2008 WL 2649589, *8 (Mo.App. W.D.2008). Subject to two very limited exceptions, the Policy did not cover the ownership, maintenance, or use of motor vehicles. *Id.* Such motor vehicle exclusions are common to homeowner's insurance policies because risks associated with the use or maintenance of motor vehicles are typically covered by automobile insurance policies. *Id. See also Standard Mut. Ins. Co. v. Marx*, 367 Ill.App.3d 512, 513, 305 Ill.Dec. 118, 854 N.E.2d 710 (Ill.App. 2006) (holding that a motor vehicle is an inherently dangerous instrumentality and an accident caused by the use of a vehicle in its inherently dangerous capacity is not meant to be covered in a homeowner's policy "but rather in an automobile policy which requires consequently higher premiums for the increased risk of injury."); *North Star Mutual Ins. Co. v. Carlson*, 442 N.W.2d 848, 855 (Minn.Ct.App.1989) (same).

■ The Camerons insist, however, that the term "dead storage" is ambiguous and therefore must be construed against Foremost. An ambiguity exists when the contract language is duplicitous, indistinct, or uncertain, leaving its interpretation open to different constructions. *Krombach v. Mayflower Ins. Co.*, 827 S.W.2d 208, 210 (Mo. banc 1992). An ambiguous provision in an insurance contract will be construed against the insurer. *Id.* "A court may not use its inventive powers to create an ambiguity where none exists or rewrite a policy to provide coverage for which the parties never contracted, absent a statute or public policy requiring coverage." *Auto Owners Ins. Co. v. Sugar Creek Memorial Post*

*No. 3976,* 123 S.W.3d 183, 186 (Mo.App. W.D.2004).

 The fact that the parties disagree as to the correct interpretation of insurance policy language does not render the policy ambiguous. *Shelter Mutual Ins. Co. v. Ballew,* 203 S.W.3d 789, 794 (Mo. App. W.D.2006). Thus, contrary to the Camerons' argument, the fact that Mr. Montgomery believed the truck was covered by his homeowner's policy does not establish ambiguity in the Policy's motor vehicle exclusion. There is no duplicity, indistinctness, or uncertainty in the meaning of the Policy's motor vehicle exclusion, and the Policy language is not open to different constructions. Point denied.

### *Conclusion*

The judgment of the trial court is affirmed.

KURT S. ODENWALD, P.J., and GLENN A. NORTON, J., Concur.