# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 18-1393

———————————————

Thomas P. Noonan; Annette M. Noonan

*Plaintiffs - Appellees*

v.

American Family Mutual Insurance Company

*Defendant - Appellant*

——————

Appeal from United States District Court
for the District of Minnesota - Minneapolis

——————

Submitted: March 12, 2019
Filed: May 24, 2019

——————

Before SHEPHERD, ARNOLD, and KOBES, Circuit Judges.

——————

ARNOLD, Circuit Judge.

This case involves what people in the roofing business call a mismatch problem. It often happens that when a part of a roof is damaged, matching replacement shingles are not available and so replacing only the damaged shingles will result in a roof with shingles that do not match. Homeowners quite reasonably do not like how this looks, and so they ask their insurer to replace the entire roof.

After hail and wind from a Minnesota thunderstorm damaged part of the roof on Thomas and Annette Noonan's home, their insurer, American Family Mutual Insurance Company, inspected the roof and determined that it had suffered about $12,000 in damage. The Noonans disputed the amount and demanded, as their policy allowed, that appraisers be called upon to provide a binding estimate of the amount of loss. An American Family adjuster asked the appraisers to divide their estimate into two categories—one for replacing damaged shingles and another for replacing undamaged shingles that would not match those needed to replace the damaged ones. The appraisers did not perform the requested apportionment: They instead found that replacing the entire roof would cost $141,000 and simply noted on the appraisal form that "This is a matching issue[.] Alternative products do not match current shing[l]e on the roof."

The adjuster notified the Noonans that their insurance policy did not cover the cost of replacing shingles on the undamaged portion of the roof. Of the $141,000 needed to replace the entire roof, the adjuster estimated that $87,232.98 was due to the cost of matching. When the Noonans sued in Minnesota state court for breach of contract and for confirmation of the appraisal award, American Family removed the case to federal district court.

The district court remanded the case to the appraisers to clarify the award by differentiating the costs attributable to actual roof damage from those attributable to shingle matching. The appraisers clarified the award and reported that actual damages were $66,619, meaning that $74,381 was attributable to matching. American Family apparently paid the Noonans the amount of actual damages, less the deductible, but it refused to pay the rest. (We have diversity jurisdiction because the amount in controversy at the time of removal exceeded $75,000, even though the amount now in dispute is less. *See Schubert v. Auto Owners Ins. Co.*, 649 F.3d 817, 821–23 (8th Cir. 2011).)

A brief review of the relevant policy provisions is in order. The full name of the insurance policy the Noonans had with American Family was the Gold Star Special Deluxe Form, which we will simply call the Form. In 1999 American Family added a Gold Star Homeowners Amendatory Endorsement, we will call it the Gold Star Endorsement, which deleted and replaced the part of the Form titled "Loss Value Determination." In 2013 American Family again amended the Form by adding the Minnesota Amendatory Homeowners Endorsement, which we will call the Minnesota Endorsement. As relevant here, the Minnesota Endorsement changed the Form by stating that American Family would "not pay to repair or replace undamaged property due to mismatch between undamaged material and new material used to repair or replace damaged material."

American Family argued before the district court that this "matching exclusion" unambiguously absolves it from responsibility to pay for the amount the appraisers attributed to matching. The district court disagreed and denied American Family's motion for summary judgment. It instead granted summary judgment for the Noonans and confirmed the arbitration award. The district court did not quarrel with American Family's reading of the matching exclusion; rather, it held that the matching exclusion simply did not apply to the Noonans' policy. It explained that the matching exclusion said that it applied to the Form but did not say that it applied to the Gold Star Endorsement, which the Noonans' policy contained. The district court reasoned this omission was intentional because an earlier provision in the Minnesota Endorsement expressly said that it amended the Gold Star Endorsement. The district court provided an alternative justification for its holding: Since the Gold Star Endorsement deleted and replaced the Loss Value Determination portion of the Form, and the Minnesota Endorsement purported to modify Loss Value Determination by, among other things, adding the matching exclusion, a chicken-and-egg dilemma arose, with the outcome depending on which endorsement applied first. If the Gold Star Endorsement applied first, the court reasoned, then the Minnesota Endorsement's addition of the matching exclusion would carry the day for American Family. But if the Minnesota

-3-

Endorsement applied first, its modifications of the Form, including the matching exclusion, would be erased when the Gold Star Endorsement was applied because it deleted and replaced Loss Value Determination. The district court therefore held that, since it was unclear which endorsement should apply first, the ambiguity should be resolved in the Noonans' favor.

We agree with American Family that the district court erred in holding that the matching exclusion did not apply to the Noonans' policy. We review the district court's interpretation of the insurance policy de novo, applying Minnesota law. *See Babinski v. Am. Family Ins. Grp.*, 569 F.3d 349, 351–52 (8th Cir. 2009). Even if we were to discount the matching exclusion's explicit statement that it modifies the Form, as the district court did, other circumstances unambiguously show that the Minnesota Endorsement, and thus the matching exclusion, applied to the Noonans' policy. The first page of the Noonans' policy explicitly says that the Minnesota Endorsement applies, and a copy of the Minnesota Endorsement was physically attached to the policy. The Minnesota Supreme Court has said "on several occasions that the endorsements or riders attached to an insurance contract are part of the contract," and the two must be construed together and effect given to all provisions. *Emp'rs Mut. Co. v. Oppidan*, 518 N.W.2d 33, 36 (Minn. 1994). We have acknowledged the general rule that "an endorsement attached to an insurance policy is a part of that policy." *Rapid Leasing, Inc. v. Nat'l Am. Ins. Co.*, 263 F.3d 820, 825–26 (8th Cir. 2001).

We recognize that it might be possible for the Minnesota Endorsement to apply to the Noonans' policy but not the matching exclusion within it. This is apparently what the district court had in mind when it concluded that the matching exclusion's failure to mention the Gold Star Endorsement made it inapplicable. But as American Family points out, there is a straightforward explanation for why American Family didn't say the matching exclusion applied to the Gold Star Endorsement even where other parts of the Minnesota Endorsement said so—the matching exclusion covered

-4-

a topic that the Gold Star Endorsement didn't, and thus the matching exclusion did not purport to amend the Gold Star Endorsement. The portion of the Minnesota Endorsement that purported to plow the same field as the Gold Star Endorsement—the Loss Value Determination provision—expressly said that revisions were being made to the Gold Star Endorsement.

The district court apparently presumed the matching exclusion was intended to be part of the Loss Value Determination provision instead of being a separate, independent part of the policy. It is true that the matching exclusion appears four paragraphs after the Minnesota Endorsement says, "The following is added to **Loss Value Determination**." But the structure of the Minnesota Endorsement unambiguously shows that that sentence swept in only the paragraph that immediately followed it, not subsequent paragraphs. And since the matching exclusion did not purport to amend the Loss Value Determination provision, the district court's chicken-and-egg dilemma evaporates because it no longer matters which endorsement applies first.

In sum, we hold that the district court erred in reading the matching exclusion out of the Noonans' policy. Applying that explicit and unambiguous exclusion, American Family is not obligated to pay for damages attributable to matching difficulties.

The Noonans maintain, though, that even if the matching exclusion is part of their policy, the policy should be reformed to cover all the losses they sustained. They argue that their policy must provide the statutory minimum coverage of a standard fire insurance policy because their policy insured against the peril of fire as well as other perils. Assuming that the standard fire insurance policy requires matching coverage, the Noonans' policy is not subject to reformation because their home was damaged by a thunderstorm, not fire. The statute setting forth the standard fire insurance policy provides that policies insuring against fire and other perils "shall,

with respect to the peril of fire, afford the insured all the rights and benefits of the Minnesota standard fire insurance policy." Minn. Stat. § 65A.01, subd. 1. The Minnesota Supreme Court has read this to mean that the minimum requirements of the standard fire insurance policy "apply only to fire losses, and not nonfire losses, under an all-risk insurance policy" like the Noonans'. *See Henning Nelson Constr. Co. v. Fireman's Fund Am. Life Ins. Co.*, 383 N.W.2d 645, 651 n.8 (Minn. 1986). Because fire did not cause the loss, the requirements of the standard fire insurance policy are simply inapplicable.

We therefore reverse the judgment and remand the case to the district court with instructions to grant summary judgment in favor of American Family.

_____