# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 19-3511

———————————————

Verto Medical Solutions, L.L.C., a Delaware limited liability company; Seth
Burgett

*Plaintiffs - Appellants*

v.

Allied World Specialty Insurance Company, a member company of Allied World
Assurance Company Holdings Ltd.

*Defendant - Appellee*

——————————

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

——————————

Submitted: January 12, 2021
Filed: May 11, 2021

——————————

Before GRUENDER, BENTON, and STRAS, Circuit Judges.

——————————

STRAS, Circuit Judge.

The issue presented in this case is whether a directors-and-officers-liability
policy required an insurer to indemnify and defend a company and its chief executive
officer against claims brought by investors. Based on its conclusion that the policy

unambiguously excluded coverage, the district court granted the insurer's motion to dismiss.  We reverse because the policy is ambiguous on this point.

## I.

Seth Burgett founded Verto Medical Solutions, L.L.C., a manufacturer of headphones.  During Burgett's tenure as president and chief executive officer, Verto entered into an asset-purchase agreement with Harman International Industries, Inc.  As part of the transaction, Harman agreed to make a series of "earn-out payments" that were dependent on meeting certain financial goals.  To gain approval of the deal from Verto's investors, Burgett agreed to reallocate a portion of those payments to them.

The relationship between Harman and Verto soured quickly.  A dispute arose when Harman kept money it had initially held back from the deal; refused to make the first round of earn-out payments; and terminated Burgett, who had been hired by Harman.  After some back and forth, the parties entered into a settlement agreement requiring a $3.5 million one-time payment to Verto.

Burgett kept a large portion of the settlement money for himself rather than distributing the funds according to the reallocation agreements.  Looking to recover what they believed they were owed, the investors sued Burgett in Iowa state court for fraud, promissory estoppel, unjust enrichment, conversion, and breach of both the reallocation agreements and his fiduciary duties to Verto and its investors.

At that point, Allied World Specialty Insurance Company, Verto's directors-and-officers-liability insurer, entered the picture.  When Verto and Burgett asked for indemnity and a defense against the claims, Allied refused to provide either.  Defending the lawsuit without Allied's help cost them more than $600,000 in attorney fees and expenses.

Now Verto and Burgett seek reimbursement from Allied. Originally filed in Missouri state court, their complaint alleges breach of contract and vexatious refusal to pay. Following removal, the district court, sitting in diversity and applying Missouri law, granted Allied's motion to dismiss based on a contractual-liability exclusion in an endorsement to the insurance policy.

## II.

Verto and Burgett take aim at the district court's decision to dismiss their complaint. Their theory is that the relevant portions of the insurance policy are ambiguous, so at a minimum it could not have been clear that they had failed to state a claim upon which relief could be granted. *See* Fed R. Civ. P. 12(b)(6). Missouri law governs the policy, so we apply the plain and ordinary meaning of the terms used, looking to the policy "as a whole" and resolving any ambiguities in favor of the insured. *Ritchie v. Allied Prop. & Cas. Ins. Co.*, 307 S.W.3d 132, 135 (Mo. banc 2009); *see also Elec. Power Sys. Int'l, Inc. v. Zurich Am. Ins. Co.*, 880 F.3d 1007, 1009 (8th Cir. 2018) (explaining that questions of contract interpretation are reviewed de novo).

## A.

Like many insurance policies, this one is complicated. As relevant here, the form policy contains an exclusion, assigned the letter "D," which states that Allied would "not cover any **Loss** in connection with any **Claim** . . . based upon, arising from, or in consequence of any actual or alleged liability of any **Insured** under any express contract or agreement." We call this standard contractual-liability exclusion "original D."

The policy also has two key endorsements. The first, Endorsement 11, "delet[ed] Exclusion D. in its entirety and replac[ed] it with" a new contractual-liability exclusion—labeled with, you guessed it, the letter "D." "New D," as we will call it, includes different exceptions but is otherwise identical to original D.

Another endorsement, numbered 13, complicates matters further. As relevant here, it says that "Exclusions A., B., C. and D. . . . are deleted in their entirety and replaced" with a list of three new exclusions labeled "A," "B," and "C," none of which directly addresses contractual liability.

Allied's position from the beginning has been that Endorsement 11 unambiguously excludes coverage because the claims against Burgett in the Iowa litigation were "based upon, arising from, or in consequence of actual or alleged liability of an Insured under" the reallocation agreements, which are "express contract[s]." Verto and Burgett, by contrast, argue that the policy is ambiguous on this point because Endorsements 11 and 13 each purport to replace an exclusion with the letter "D" without specifying which one. The district court, for its part, ruled that Endorsements 11 and 13 *together* replaced original D, leaving new D in its place and Verto and Burgett without coverage. *See United Fire & Cas. Co. v. Titan Contractors Serv., Inc.*, 751 F.3d 880, 883–84 (8th Cir. 2014) (applying Missouri law) (explaining that an insurer owes no duty to defend and, consequently, no duty to indemnify if the claims "fall unambiguously within" an exclusion).

B.

If the insurance policy seems unclear, it is. Endorsement 13 injected "uncertainty" by deleting Exclusion D, but then failing to specify which one: original D, new D, or both. *Ritchie*, 307 S.W.3d at 135 (quotation marks omitted) (explaining that "ambiguity exists when there is duplicity . . . in the meaning of the language in the policy" (quotation marks omitted)). We cannot rule out the possibility, in other words, that the endorsements deleted and replaced original D *and* new D, leaving the policy without a contractual-liability exclusion.[1]

---

[1]As Allied points out, Endorsements 11 and 13 became effective on the same date. For this reason, we cannot rely on the canon that "the contract last executed, if valid, . . . supersede[s] the first to the extent that the two are inconsistent." *Berry v. Crouse*, 376 S.W.2d 107, 112 (Mo. 1964); *cf. Noonan v. Am. Fam. Mut. Ins. Co.*, 924 F.3d 1026, 1029 (8th Cir. 2019) (applying Minnesota law) (ignoring the

-4-

In fact, the policy "is reasonably open to [at least two] different constructions." *Id.* (quotation marks omitted). The first is that Endorsement 11 deleted and replaced original D with new D, and then Endorsement 13 replaced new D with nothing. Another is the one adopted by the district court, which is that Endorsements 11 and 13 *together* replaced original D with new D. With one reasonable construction potentially covering contractual-liability claims and the other excluding them, the policy is ambiguous. *See Am. Home Assur. Co. v. Pope*, 591 F.3d 992, 1001 (8th Cir. 2010) (applying Missouri law) (explaining that a policy is ambiguous when it "leav[es] open a question of what it does and does not cover").

Missouri law tells us what to do next. When an ambiguity exists, we must construe it against the insurer, the policy's drafter, even if extrinsic evidence of the parties' intent is available. *See Burns v. Smith*, 303 S.W.3d 505, 511–12 (Mo. banc 2010). Under this rule, called *contra proferentem*, we adopt the construction that "furnish[es]" coverage to Verto and Burgett—in this case, the one in which neither original D nor new D exists. *Id.* at 512 (quotation marks omitted). On remand, Allied can continue to argue that other exclusions apply, but just not either of those.

III.

We accordingly reverse the judgment of the district court and remand for further proceedings consistent with this opinion.

_____

sequencing of endorsements when the terms of the insurance policy could be reconciled without considering this canon). We also have to read the policy as a whole, so we cannot simply give priority to Endorsement 11 over Endorsement 13, as Allied wants us to do. *See Todd v. Mo. United Sch. Ins. Council*, 223 S.W.3d 156, 163 (Mo. banc 2007).