# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-2705
_____

Auto-Owners Mutual Insurance Company

*Plaintiff - Appellee*

v.

Beverly Granger

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Western District of Missouri - Joplin
_____

Submitted: September 18, 2025
Filed: January 14, 2026
_____

Before COLLOTON, Chief Judge, ERICKSON and STRAS, Circuit Judges.
_____

STRAS, Circuit Judge.

The issue here is whether an automobile-insurance policy unambiguously subjects underinsured-motorist claims by two spouses to a single $250,000 per-person limit. The district court concluded it did. With another reasonable interpretation available, however, we reverse.

## I.

Randy Granger suffered severe injuries in a car accident. The other driver's insurer paid out to the policy limit of $25,000. Short of what he needed to cover his injuries, Randy filed a claim under his own policy for underinsured-motorist benefits, which come into play when "a tortfeasor's automobile[-]insurance policy limits are insufficient to cover the loss." *Jones v. Kennedy*, 108 S.W.3d 203, 206 n.1 (Mo. Ct. App. 2003). Auto-Owners Mutual Insurance Company, his insurer, then paid out to its per-person limit of $250,000.

Beverly, Randy's wife, also filed an underinsured-motorist claim with Auto-Owners. Hers was for loss-of-consortium damages to cover the decline in "affection, care, companionship, and services" from Randy's injuries. *Wright v. Barr*, 62 S.W.3d 509, 537 (Mo. Ct. App. 2001). Treating Beverly's request as purely derivative of Randy's, it refused to pay because the per-person limit for underinsured-motorist benefits had already been reached.

The next stop was federal court. Auto-Owners filed first, seeking a declaration that it owed nothing more to the Grangers. Beverly counterclaimed for breach of contract based on the insurer's refusal to pay. The district court sided with Auto-Owners on both claims at summary judgment. In its view, Beverly's loss-of-consortium claim "necessarily and *inseparably* follow[ed]" the one covering Randy's injuries. (Emphasis added). Our task on appeal is to figure out whether the policy supports the decision to group the two claims as one.

## II.

We review the interpretation of an insurance policy de novo. *See Great Am. All. Ins. Co. v. Windermere Baptist Conf. Ctr., Inc.*, 931 F.3d 771, 773 (8th Cir. 2019). Everyone agrees that Missouri law controls, so we apply the policy's "plain and ordinary meaning . . . , looking [at it] 'as a whole' and resolving any ambiguities in favor of the insured." *Verto Med. Sols., L.L.C. v. Allied World Specialty Ins. Co.*,

-2-

996 F.3d 912, 913 (8th Cir. 2021) (quoting *Ritchie v. Allied Prop. & Cas. Ins. Co.*, 307 S.W.3d 132, 135 (Mo. banc 2009)).

## A.

The starting point is the declarations page, which "state[s] the policy's essential terms in an abbreviated form." *Owners Ins. Co. v. Craig*, 514 S.W.3d 614, 617 (Mo. banc 2017) (citation omitted). At the top, it lists Randy and Beverly as the named insureds. Farther down, it introduces the coverage limits. The row for underinsured-motorist benefits sets a per-person limit of $250,000 and a total limit of $500,000 per "occurrence," which the policy defines as "an accident that results in bodily injury or property damage."

When we "look elsewhere to determine the scope of coverage," the policy explains what it covers and when, the exclusions and limits of liability, and various other conditions. *Id.* (citation omitted). As relevant here, the "COVERAGE" section extends underinsured-motorist coverage to "automobile[s] you do not own," like the company truck Randy was driving when the accident occurred. In those situations, Auto-Owners "will pay compensatory damages, including but not limited to loss of consortium, you are legally entitled to recover from the owner or operator of any underinsured automobile for bodily injury you sustain."

Here, the key interpretive question is the identity of "you." The policy defines the term as "any named insured shown in the Declarations and . . . [the] named insured's spouse who resides in the same household."[1] *See Shelter Mut. Ins. Co. v. Sage*, 273 S.W.3d 33, 38 (Mo. Ct. App. 2008) (explaining that, in general, "definitions in an insurance policy are controlling as to the terms used within the

---

[1]The parties briefed and argued the case in the district court based on an earlier version of the policy, which had a slightly different definition. It defined "you" as "the first named insured shown in the Declarations and . . . your spouse who resides in the same household." Whichever version we apply, the outcome remains the same.

policy"). Including both Randy and Beverly, as the definition does, yields two reasonable interpretations, one that blocks Beverly from recovering loss-of-consortium damages and another that allows it.

1.

The first is the district court's interpretation, which results in Auto-Owners owing her nothing. The scope-of-coverage provision, quoted above, requires Auto-Owners to pay "*you*" underinsured-motorist benefits, including for loss of consortium, "for bodily injury *you* sustain." (Emphases added). If Beverly has sustained no "bodily injury," then she cannot receive "compensatory damages," for loss of consortium or otherwise. Getting there requires the "you" entitled to compensatory damages to be the same "you" that suffered bodily injury. *See Shaffner v. Farmers Mut. Fire Ins. Co. of St. Clair Cnty.*, 859 S.W.2d 902, 907 (Mo. Ct. App. 1993) ("When words are used in one sense in one part of a contract, and such words are again used in the same contract, they are as a general rule deemed to have been used in the same sense as in the first instance." (citation omitted)). It is a straightforward application of the presumption of consistent usage. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 170 (2012) (describing the canon); *cf. 3M Co. v. Comm'r*, 154 F.4th 574, 580 (8th Cir. 2025) (applying it to a statute).

One other textual clue supports this reading. Underinsured-motorist benefits are "*for* bodily injury you sustain." (Emphasis added). Read literally, the use of the word "for," which means "because" or "on account of," implies that all compensatory damages flow from the bodily injury of whomever suffers it. *Webster's Third New International Dictionary* 886 (2002). Under this view, any loss-of-consortium payments to Beverly, to the extent they are available, would "necessarily and inseparably follow[]" Randy's recovery, just as the district court concluded. *Cf. Ward v. Am. Fam. Ins. Co.*, 783 S.W.2d 921, 923 (Mo. Ct. App. 1989) (noting that, "[u]nder Missouri Law, a husband's claim for loss of consortium is derivative of his wife's claim for bodily injury" in the sense that it does not stem

from "a separate and distinct 'bodily injury'"). It would make Beverly's recovery "derivative" of whatever Randy receives, subjecting everything that can be recovered to *his* $250,000 per-person limit. *Id.*

2.

Although the district court's interpretation is reasonable, so is another one. It comes from the interplay between the policy's scope-of-coverage provision, which "includ[es] . . . loss of consortium," and Missouri's treatment of those claims. Under Missouri law, "[t]he cause of action for loss of consortium seeks to compensate the *uninjured* spouse." *Kingman v. Dillard's, Inc.*, 643 F.3d 607, 615 (8th Cir. 2011) (emphasis added); *see Thompson v. Brown & Williamson Tobacco Corp.*, 207 S.W.3d 76, 113 (Mo. Ct. App. 2006) (explaining that "for one spouse to recover for loss of consortium, the *other* spouse must have a valid claim for personal injury" (emphasis added)). The idea is that this background principle allows Beverly, who is the "uninjured spouse," *Kingman*, 643 F.3d at 615, to recover these damages, so the insurance policy must reflect that understanding too, absent language to the contrary. *See Cano v. Travelers Ins. Co.*, 656 S.W.2d 266, 271 (Mo. banc 1983); 2 Jordan R. Plitt et al., *Couch on Insurance* § 22:50 (3d ed. 2025 update) (explaining that "where technical terms have a well-recognized legal meaning, they should be understood as used in their technical and legal sense, at least where neither the context nor any statutory or charter provision indicates a broader use").

The only potential stumbling block comes from the fact that each reference to "you" in the scope-of-coverage provision arguably refers to the same person. But a closer look reveals that the definition has an "and" that can be read disjunctively. *See Burns v. Smith*, 303 S.W.3d 505, 511 (Mo. banc 2010) (noting that "and" can take meanings equivalent to "or"). As a reminder, it says that "[y]ou . . . means any named insured shown in the Declarations *and* . . . [the] named insured's spouse who resides in the same household." (Emphasis added). Each instance of "you" *could* be Randy *or* Beverly in either role. *See id.* Read that way, a favorable interpretation for Beverly emerges: "you [(Beverly)] are legally entitled to recover . . . for bodily

-5-

injury you [(Randy)] sustain[ed]." Randy's bodily injury, in other words, becomes the hook for the loss-of-consortium damages Beverly is trying to recover, consistent with how Missouri has defined the cause of action.

No longer would the $250,000 per-person limit be a barrier to recovery. *See Cano*, 656 S.W.2d at 271. It is, after all, per *person*, allowing each spouse to recover for their own damages subject to payments by the tortfeasor's insurer and the $500,000 per-occurrence limit. *See Maddox v. Truman Med. Ctr., Inc.*, 727 S.W.2d 152, 154 (Mo. Ct. App. 1987) ("Though a consortium claim is derivative from the injured spouse's claim . . . the consortium claim and the underlying claim exist to compensate the *different losses* the two spouses suffer." (emphasis added)). It would not matter that Beverly suffered no "bodily injury" herself. *See Cano*, 656 S.W.2d at 271; *cf. Ward*, 783 S.W.2d at 923–24 (discussing a different policy's provisions, which placed a limit on "each person," tied it to the "bodily injury sustained by [that] person," and made the "each[-]accident" amount "[s]ubject to the limit for each person").

Nor would it result in the improper stacking of claims. "'Stacking' refers to an insured's ability to obtain multiple insurance coverage benefits for an injury . . . ." *Ritchie*, 307 S.W.3d at 135 (citation omitted). "An anti-stacking clause," which is enforceable for underinsured-motorist coverage, "prohibits the insured from collecting on multiple coverage items or policies from the same insurer for a single accident." *Hall v. Allstate Ins. Co.*, 407 S.W.3d 603, 608 (Mo. Ct. App. 2012) (citation omitted). The Auto-Owners policy has one that prevents the underinsured-motorist coverage from increasing "regardless of . . . the number of automobiles shown or premiums charged in the Declarations . . . [and] the number of claims made."

Here, the Grangers are not trying to circumvent the limits through stacking the coverages on multiple vehicles. *See, e.g.*, *Ritchie*, 307 S.W.3d at 135 (describing an insured seeking benefits for "two or more separate vehicles under separate policies" or "one policy which covers more than one vehicle" as examples of

stacking).  Rather, they are relying on the policy, read in light of Missouri law, to seek coverage for distinct losses suffered by each spouse from a single accident.  *See Maddox*, 727 S.W.2d at 154 (explaining that loss-of-consortium and bodily-injury claims "exist to compensate the different losses the two spouses suffer").  Through this lens, Beverly's reading of the policy is reasonable, even if it may not be the most obvious one.  *See Cano*, 656 S.W.2d at 270–71 (reaching a similar conclusion about a loss-of-consortium claim in an uninsured-motorist case).

B.

In sum, the Auto-Owners policy "is poorly drafted, leaving open a question of what it does and does not cover."  *Am. Home Assurance Co. v. Pope*, 591 F.3d 992, 1001 (8th Cir. 2010); *see Cano*, 656 S.W.2d at 271.  Fortunately, "Missouri law tells us what to do next."  *Verto Med. Sols.*, 996 F.3d at 915.  Under the canon of *contra proferentem*, we construe any ambiguity "against the insurer," the policy's drafter.  *Burns*, 303 S.W.3d at 511–12; *see Lutsky v. Blue Cross Hosp. Serv., Inc.*, 695 S.W.2d 870, 875 n.7 (Mo. banc 1985) (explaining that "inconsistent provisions will be construed in favor of the insured").  In this case, it requires us to adopt the interpretation of the policy that favors Beverly, which will allow her to recover loss-of-consortium damages.[2]  *See Cano*, 656 S.W.2d at 271.

---

[2]Auto-Owners contends that we should nonetheless affirm, because Beverly failed to exhaust her claim with the other motorist's insurance policy before looking to her own.  One problem is that we do not know whether the other policy makes loss-of-consortium damages available.  Nor, even if it does, whether the $25,000 payment to Randy exhausted its limits.  *See Ward*, 783 S.W.2d at 923 (explaining that, in another policy, loss of consortium was subject to the same limit as bodily injury).  Without answers to these questions and others, we decline to decide the case based on her alleged failure to exhaust.  *See Cont'l Cas. Co. v. State Farm Mut. Auto. Ins. Co.*, 868 S.W.2d 547, 548–49 (Mo. Ct. App. 1993) (refusing to reach issues that depended on the interpretation of a policy that was not in the record at summary judgment).

## III.

In the absence of any genuine issue of material fact, we reverse the district court's judgment and remand for the entry of judgment in Beverly's favor. *See Chamness v. Am. Fam. Mut. Ins. Co.*, 226 S.W.3d 199, 208 (Mo. Ct. App. 2007) (reversing and remanding with directions to enter judgment in the insured's favor after concluding that a policy was ambiguous).

_____